ANDREW J. MURPHY, EDWARD C. CROW and HARRY P. DRISLER, Appellants, v. CONCORDIA PUBLISHING HOUSE, a Corporation.—155 S. W. (2d) 122.

Division One, June 12, 1941.

Rehearing Denied, July 25, 1941.

Motion to Transfer to Banc Overruled, October 30, 1941.

*Harry G. Waltner, Jr.,* Chief Counsel, and *Edward D. Summers,* Assistant Counsel, for appellants.

*Geo. Eigel* and *Cullen Coil* for respondent.

BRADLEY, C.—Plaintiffs constitute the Unemployment Compensation Commission. They brought suit in the St. Louis Circuit Court to recover from the defendant, as an employer, contributions in the sum of $4284.58, alleged to be due for the calendar year of 1937. A jury was waived. Most of the facts were agreed upon. The trial court found for defendant and plaintiffs appealed.

Our Unemployment Compensation Law was enacted in 1937, Laws 1937, p. 574 et seq.; amended in 1939, Laws 1939, p. 887 et seq., and now Sec. 9421 et seq., R. S. 1939. Defendant claimed exemption under paragraph (7) of the exemptions set out in Sec. 9423. It is provided that the term *employment* shall not include "service performed in the employ of a corporation, community chest, fund, or

foundation, organized and operated exclusively for religious, charitable, scientific or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual.''

Defendant corporation is a subsidiary of the religious corporation known as the Evangelical Lutheran Synod of Missouri, Ohio, and other states, called the Missouri Synod. The Synod owns all the stock of defendant and receives all of its net earnings. It is admitted that the Synod is exempt from the payment of contributions under the Unemployment Compensation Act.

In 1869, the Synod acquired a printing plant in St. Louis, called the Concordia Publishing House, and operated the plant until May 28, 1891. On that date the Concordia Publishing House was incorporated as a Missouri business and manufacturing corporation under Art. 8, Chap. 42, R. S. 1889, now Sec. 5338 et seq., R. S. 1939. The capital stock was $196,000, divided into 196 shares of the par value of $1000 each. The stock was issued to seven individuals, twenty-eight shares to each, but such individual did not in fact own the stock. The seven individuals, in whose name the stock is issued, constitute defendant's board of directors.

Defendant's directors are selected triennially by the Synod, three at one triennial meeting and four at the next. The term of a director is six years. Upon selection of *new* directors the stock ostensibly held by their immediate predecessors is issued to the new directors, twenty-eight shares to each. Printed on the back of the stock certificate issued to a director, is a declaration which he signs, and this declaration recites that he has no right or interest in any of the assets of the company, and that all the net proceeds are to be delivered to the Synod. The director signs the declaration, and also endorses the stock certificate to the Synod and it (the certificate) is delivered to the treasurer of the Synod. Under such *modus operandi,* the Synod has, at all times, the actual possession of all the stock.

The purpose of the Concordia Publishing House corporation was, as stated in its articles of incorporation, as follows: ''The object, purpose and business for which this corporation is formed shall be to purchase the property and assets of the Concordia Publishing House (the printing plant) of the City of St. Louis, Missouri, and to carry on the publishing business lately carried on by said house, including a general printing, publishing and bindery business; and to do and perform all other acts necessary or proper in connection with such business.''

During the calendar year 1937, defendant had 155 employees, and paid out wages in the sum of $238,031.97, and on May 20, 1937, its board of directors declared a dividend of $100,000 to be paid to the Synod. And it is conceded that defendant would be liable for contributions as to all these employees except for the exemption provision of the Unemployment Compensation Act.

The agreed statement of facts recites that the following from page 755 of defendant's 1939 catalog, in evidence, is "a true and complete description" of defendant's activities:

"Concordia Publishing House, unlike other business institutions, exists solely in the interest of the Lord's kingdom. We produce such materials as are helpful to the maintenance and the advancement of the Christian Church, the school, and the home. We engage exclusively in the manufacture and sale of articles necessary for the welfare of these institutions. While we are a business institution in every sense of the word, our earnings flow into the general treasury of the church.

"Concordia Publishing House supplies everything a congregation uses, except building materials and church furniture. We provide Christian day schools, of which there are several thousand in the United States alone, as well as an even greater number of Sunday schools, with all necessary materials. We furnish homes with Christian literature of every description and with whole libraries of select secular reading matter. We produce the necessary ▮▮▮▮ tools for the professional men of the church—its ministers and teachers. We issue twenty-three periodicals—for the preacher and the teacher, for the Sunday school and the missionary worker, for the layman and church choirs. We print Bibles, hymn books, catechisms, school and college textbooks, professional books, storybooks, tracts, pamphlets, and the like—we supply the various departments of the synodical organization with their requirements.

"Concordia Publishing House is today the largest institution of its kind. Our industrial valuation has increased until it now runs into the millions. In normal times we pay the Missouri Synod an annual dividend of $120,000. Our plant occupies the equivalent of an ordinary city block, our various buildings have a floor area of approximately four acres. Our new manufacturing plant was completed in 1925 and is generally acknowledged to be among the most modern of its kind. Although equipped with the latest machinery and labor saving devices, our employees number about 150. Our present catalog lists thousands of sales items. Our combined periodicals subscription list total 300,000."

Practically the same language contained in paragraph (7), supra, of our Unemployment Compensation Act, is contained in the federal income tax act. [26 U. S. C. A., sec. 101 (6) (1940 Ed.).] Trinidad, Collector, v. Sagrada Orden De Predicadores, 263 U. S. 578, 44 Sup. Ct. 204, 68 L. Ed. 458, was to recover money paid under protest as an income tax. The cause arose in the Philippine Islands, and plaintiff, Sagrada, etc., was successful in the Philippine courts. [42 Philippine, 397.] The Supreme Court granted certiorari. [260 U. S. 711, 43 Sup. Ct. 13, 67 L. Ed. 476.]

It was conceded that the corporation was organized and operated for religious, charitable and educational purposes, and that no part of its net income inured to the benefit of any stockholder or individual, but the contention was made that it was not operated *exclusively* for those purposes, and was not therefore exempted from income tax.

The court said that two matters were apparent on the face of the exemption clause, viz.: "First, it recognizes that a corporation may be organized and operated exclusively for religious, charitable, scientific, or educational purposes, and yet have a net income. Next, it says nothing about the source of the income, but makes the destination the ultimate test of exemption." The contention was made that the corporation was also operated for business and commercial purposes, that is, that it was not exclusively operated for religious, charitable, and educational purposes, but it was held that the deviation was only incidental and not substantial. And, under the facts, it was held that the corporation was exempt from the payment of an income tax.

The question in Roche's Beach, Inc. v. Commissioner of Internal Revenue (2d Cir.), 96 Fed. (2d) 776, was whether the corporation was exempt from taxation on its income for 1931 by virtue of Sec. 101 (6), (14), 26 U. S. C. A. (1940 Ed.). It is stated, supra, that the language of Sec. 101 (6) of the federal income tax law is practically the same as paragraph (7) of our Unemployment Compensation Act, set out above. Section 101 (14) provides that a corporation shall be exempt from the federal income tax when "organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from the tax imposed by this chapter."

Roche's Beach corporation was organized under New York law by one Roche, shortly before his death, for the purpose of being the medium through which a charitable foundation created by his will could operate his property, and collect the income therefrom after his death. After his death the trustees operated the property through the medium of the corporation and turned the net income over to the foundation for the charitable purposes outlined in the will. In 1931, the gross income of the corporation was $99,957, and the net was $23,243. The income was derived "from bathhouse, suit and towel rentals; concessions given out for restaurants and refreshments; rent from a portion of the beach occupied by a club; and rentals of the houses and garage."

The corporation filed income tax return for 1931, and paid the indicated tax, and then filed claim for refund on the ground that it was exempt. The Board of Tax Appeals held that the Roche's Beach corporation was not exempt under either subdivision mentioned "because its certificate of incorporation gave it broad powers re-

lated to carrying on various kinds of business." The Circuit Court of Appeals held, under the facts, that the corporation was exempt under Sec. 101 (6).

Mohawk Mills Assn., Inc. v. Miller, 22 N. Y. Supp. (2d) 993, involved an exemption question under the New York Unemployment Compensation Act. So far as concerns the present facts, the New York exemption is the same as ours. The charter of the Mohawk Mills corporation stated its purpose to be "1. to promote the welfare and entertainment of all its members and to promote athletic contests of all kinds between the various departments of the Mohawk Carpet Mills, Inc., and between the association and outside organizations. 2. To purchase, sell, mortgage and lease real property in carrying out the objects of the association. All said activities are to be conducted on a nonprofit making basis."

The facts were these: The membership of the association consisted of approximately 2000 persons, each of whom paid annual dues of 50 cents, and membership was limited to the employees of the Mohawk Carpet Mills. The only officer who received a salary was the secretary. Mohawk Carpet Mills furnished the association a building in which it conducted a cafeteria and also in which its members and the public generally met for social activities. The corporation, as part of its social program, sponsored a band, glee club, various athletic teams, dancing, roller skating and other forms of entertainment for the recreation of its members. The cafeteria was open to the public and was operated on a nonprofit basis. The revenue derived from the cafeteria was insufficient for its maintenance and the deficit was borne by Mohawk Carpet Mills. The latter company also leased the corporation an amusement park at an annual rental of $1. The total income derived from these various enterprises was devoted to general welfare, educational and charitable purposes. No profit inured to any member of the corporation.

In ruling the question the court said (22 N. Y. Supp. (2d) 995): "A claim of exemption from taxation by virtue of a statute is construed *strictissimi juris*. It must rest upon language in regard to which there can be no doubt as to the meaning, and the exemption must be granted in terms too plain to be mistaken. With that rule in mind it is impossible to escape the conviction that the purposes for which appellant was incorporated, as disclosed in its certificate, are solely fraternal and social. Nowhere in that certificate is there any statement indicating that its objects are educational or charitable. . . ."

It was contended in the Mohawk Mills case that the use, that is, the ultimate destination, to which the corporation's income was applied, was the test for exemption. Of that contention the court said (22 N. Y. Supp. (2d) l. c. 996): "In support of that contention he (counsel) has cited decisions of the Federal courts and the Board

of Tax Appeals. In the case before us these authorities have no persuasive force because they conflict with the decisions of our own courts. It has been held again and again that the right of a corporation to exemption must be determined from the articles of incorporation alone and that if any of its powers are not charitable, the corporation is not entitled to be classified as a charity,'' citing Matter of DePeyster's Estate, 210 N. Y. 216, 104 N. E. 714; Matter of Beekman's Estate, 232 N. Y. 365, 134 N. E. 183; Matter of Kennedy's Estate, 240 App. Div. 20, 269 N. Y. Supp. 136, affirmed, 264 N. Y. 691, 191 N. E. 629; Helvering v. Coleman-Gilbert Associates, 296 U. S. 369, 56 Sup. Ct. 285, 80 L. Ed. 278.

It seems, in some of the cases at least, that exemption from the federal income tax under Sec. 101 (6), 26 U. S. C. A., is determined by the ultimate *destination* of the income, regardless of the terms of the charter of the corporation claiming exemption. The question in Helvering v. Coleman-Gilbert Associates, 296 U. S. 369, cited in the Mohawk Mills case, supra, was whether the income of a business trust was taxable as the income of corporation. The Circuit Court of Appeals held (76 Fed. (2d) 191) that the question was to be determined, not by what the trustees were authorized to do under the trust instrument, but by what they actually did. The Supreme Court reversed such holding, and held that the question was to be determined by what the trustees were *authorized* to do under the terms of the trust instrument.

It will be noted that exemption paragraph (7) of our Unemployment Compensation Act says that corporations are ▮▮▮ exempt which are organized *and* operated *exclusively* ''for religious, charitable, scientific, literary, or educational purposes.'' So far as appears here, there is nothing in defendant's charter to even suggest that it was organized exclusively for religious purposes. Measured by its charter, defendant is just what its 1939 catalog says it is, ''a business institution in every sense of the word.'' And, following the holding in the Mohawk Mills case, supra, we hold that the right of defendant to exemption from the payment of contributions under our Unemployment Compensation Act must be determined from its charter powers and not by the ultimate destination of its net income. To hold otherwise would be to ignore the statute.

The judgment should be reversed and the cause remanded with directions to enter judgment for plaintiffs as prayed for in the petition. It is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.