NORTHEAST OSTEOPATHIC HOSPITAL, a Corporation, Appellant, v. E. J. KEITEL, HARRY DRISLER and GEORGE A. ROZIER, Constituting the the UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI.— No. 39951.—197 S. W. (2d) 970.

Division One, November 11, 1946.

Rehearing Denied, December 9, 1946.

*Myer M. Rich* and *O. Hampton Stevens* for appellant.

742

*Charles F. Moseley,* Counsel, and *John L. Porter,* Assistant Counsel, for respondents; *Michael J. Carroll* of Counsel.

VAN OSDOL, C.—Appeal from a judgment affirming a decision of the Unemployment Compensation Commission of Missouri.

The Commission decided the services performed in the employ of appellant Hospital are not excluded from the statutory definition of the term "employment," as used in the Unemployment Compensation Law by Section 9423 (i) (6) (7), R. S. 1939, Mo. R. S. A. Sec. 9423 (i) (6) (7) ;. now Section 9423 (i) (6) (F), Laws of Missouri 1943, p. 921. The Section provides the term "employment" as used in the Law shall not include "(F) Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual . . ."

At the outset we must consider a contention of Hospital, appellant, that Commission by its answer to Hospital's petition filed in the instant action for review admitted the services performed in the employ of Hospital are specifically excluded from the purview of the Unemployment Compensation Law.

In its petition Hospital alleged, "1. Comes now Northeast Osteopathic Hospital, Plaintiff, and shows the Court that it is a corporation, duly organized and existing according to law, and that it was formerly known as Northeast Hospital; that plaintiff is a charitable corporation, within the meaning of the law, and that the employment of its employees is not subject to the Unemployment Compensation Act, for the reason that its employees are specifically exempted from the provisions of the Missouri Unemployment Compensation Act by Section 9423 (i) (6) (F)." In the second numbered paragraph of the petition the fact of the decision of Commission adverse to plaintiff Hospital is alleged, and it is further stated the action is brought to review the decision. In the third numbered paragraph (with seven lettered subparagraphs) Hospital undertook to state the grounds upon which the review was sought. See Section 9432B (c), Laws of Missouri 1943, p. 940. In this paragraph of the petition it was assigned Commission had erred in its decision for reasons set out in the seven lettered subparagraphs. The grounds for review so set out in paragraph numbered 3 were particularly stated by allegations of facts relating to Hospital's incorporation and operation, and relating to the determination of Hospital's exemption from payment of various taxes by Federal, State, County and City taxing agencies; it was further stated the exemption of Hospital should have been determined

solely upon the purposes of Hospital's incorporation as set out in Hospital's charter; and that the decision of the Commission was not supported by competent and substantial evidence. Commission by answer, after certifying and stating the filing with the reviewing court of Commission's record, including all documents, papers and the transcript of the testimony as required by Section 9432B (c), supra, pleaded, ''2. For further answer to the Petition of the Plaintiff herein, said Defendants deny each and every allegation iา Plaintiff's Petition contained, except Defendants admit the allegations contained in the paragraphs numbered 1 . . . of said Petition.'' The averments in paragraph 1 of Hospital's petition that Hospital is a charitable corporation within the meaning of the Law, and that the services of its employees are specifically exempted by Clause (F), Section 9423, supra, are construed as statements of the ultimate and mixed issues of law and fact involved to be determined as the bases of a decision. It will be observed from the answer that facts and contentions stated in the subparagraphs setting out the ground for review in paragraph 3 are not conceded but are contested by Commission, and the answer will not ·be so ·technically construed as to give decisive significance to an admission only apparent. The pleadings in an action for the review of a decision of the Commission should be liberally construed with a view of determining the real questions for review; especially is this true in view of the remedial social char- ·acter of the Unemployment Compensation Law. We remind ourselves that the effect of the exclusion of the services of Hospital's employees from the meaning of the word ''employment,'' as used in the Law, not only would effectuate the exemption of Hospital from the payment of unemployment contributions or taxes, but would deprive Hospital's employees of the benefits of unemployment compensation.

As has already become evident, Hospital, appellant, contends it is a corporation ''organized and operated exclusively for ` . . . charitable . . . purposes.'' Hospital does not contend it is a corporation organized and operated exclusively for purposes named in Clause (F), Section 9423, supra, other than charitable.

Commission in making its decision adopted the findings of facts made by its special representative, as follows,

''The Northeast Hospital was first incorporated in January of 1936 under the Laws of Missouri governing manufacturing and business corporations. On December 27, 1940, the present corporation was formed by a pro forma decree of the Circuit Court . . . under the name of Northeast Hospital. It acquired the business and assets of the original Northeast Hospital, a corporation, which was dissolved, and continued the operation of the hospital. On January 31, 1944, the name of the corporation was changed to Northeast Osteopathic Hospital, the name by which it is now known, by decree of

the same Court. The purposes announced in its Articles of Incorporation are stated as follows:

" 'Fourth: This association is formed for the purpose of owning, operating and maintaining the Northeast Hospital . . . Kansas City, Missouri, and such other hospitals or institutions as it may in the future acquire; to foster and encourage the study and practice of osteopathy; to foster and encourage scientific research; to buy, sell, mortgage, encumber, lease and deal in land and buildings in Kansas City . . . and elsewhere for the purpose of fostering and encouraging the study and practice of osteopathy; to buy, sell, mortgage, encumber, lease, and deal in equipment and other personal property which may be necessary to provide facilities for the study and practice of osteopathy; to employ internes, nurses, and others to carry on the work of the Northeast Hospital and such other hospitals or institutions as this association may acquire; to do each and every act which may be necessary to carry out the purposes for which this association is formed.'

"The corporation operates in accordance with its charter in that it operates a hospital, employs internes and nurses, and provides facilities for the practice of osteopathy. Patients admitted to the hospital are charged regular fees, comparable to charges made in other hospitals. In a few instances, upon the recommendation of an investigating committee, patients have been admitted without charge. The hospital does not conduct a school for the study of osteopathy, nor does it maintain a school for nurses. The hospital maintains its own laboratory, but does not engage in scientific research and experimentation beyond that which is required for the treatment of individual patients.

"Dr. John L. Heisler, a full-time resident doctor of osteopathy, acts as superintendent of the hospital, and for his services as such receives $145 per month plus living quarters and meals. Dr. Heisler is also pathologist for the hospital and for this service receives fifty per cent of all laboratory fees. He also receives ten per cent of the gross receipts on all sales of drugs from the hospital dispensary.

"The Special Representative finds that the Northeast Osteopathic Hospital was a corporation formed under the Laws of Missouri relating to benevolent, religious, scientific, fraternal-beneficial, educational and miscellaneous associations under Article X, Chapter 33, R. S. 1939, but that it has not claimed exemption on any of the grounds enumerated in the Unemployment Compensation Law and that its only claim for exemption is based on the ground that it is a public hospital. The Special Representative finds that . . . Hospital is not a corporation organized and operated exclusively for . . . charitable . . . purposes . . ., no part of the net earnings of which inures to the benefit of any private shareholder or individual. The Commission's Special Representative further finds that part of the net

earnings, to-wit: a per centum of laboratory fees and a per centum of the earnings from drug sales have inured to the benefit of a private individual, Dr. John L. Heisler, superintendent of the hospital.''

Commission held as a matter of law and decided (and the decision was affirmed by the reviewing circuit court as stated) that services performed by all persons in the employ of appellant ''are in 'employment' within the meaning of the term 'employment' as it is defined in the Unemployment Compensation Law, and that no part of such services are excluded from the definition of 'employment' subject to the Law by the provisions'' of Section 9423 (i) (6) (F), supra.

See that Hospital, organized under Article 10, Chapter 33, supra, has no shares of stock (hence no shareholders). Under the facts, Hospital is operating on a non-profit basis in the sense that no part of net earnings inures to the benefit of a private individual. (We hesitate to affirm Commission's decision upon the finding that Dr. Heisler's salary and commissions constitute a part of net earnings. It was neither found as a fact nor seen from the evidence, nor is it contended the salary and the commissions on laboratory fees and drug sales paid Dr. Heisler were so great it should be inferred he was, in effect, receiving a part of Hospital's net earnings. It should be obvious a hospital should have supervision; and the commissions paid Dr. Heisler were upon fees for laboratory tests and upon the gross receipts of routine drug sales made personally by Dr. Heisler for Hospital and ▉ incidental to the treatment of the hospital patients.)

▉ It is contended by Hospital that sole resort must be had to its charter for a determination of the claimed exemption. The cases of In re First National Safe Deposit Co., 351 Mo. 423, 173 S. W. 2d 403; Murphy v. Concordia Publishing House, 348 Mo. 753, 155 S. W. 2d 122; Northwestern Municipal Ass'n. v. United States, 99 F. 2d 460; Helvering v. Coleman-Gilbert, 296 U. S. 369, 56 S. Ct. 285, are cited. These cases are in harmony with the general rule that the purpose of an organization must be determined from the purpose declared in the instrument creating it. As said by the Supreme Court of the United States in the Helvering case, ''The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted.'' And, in the instant case, if what the articles of agreement say are Hospital's purposes shows Hospital was *not* organized exclusively for charitable purposes, then what the articles of agreement say will be decisive. In the Murphy case, defendant Concordia Publishing House was held by this court to be a business corporation (not a religious corporation) and so the defendant was not exempted by Clause (F), Section 9423, supra. The case was ruled upon the purposes stated in the defendant's charter, although a page of defendant's 1939 catalog, confirming defendant's

business activities, was recited in an agreed statement of facts which was considered by the court. The ultimate destination of defendant's net income was Synod, which consecrated the income to religious purposes. But, measured by its charter, defendant was just what its 1939 catalog said it was, "a business institution in every sense of the word." As between the avowed business purpose in its charter and the ultimate destination of defendant's net income, the purpose stated in the charter was determinative. The case does not hold that, had the charter showed the purposes of the organization of defendant to have been exclusively religious, the court should not have examined into defendant's activities to determine whether or not such was the purpose and the exclusive purpose of defendant's operations. See American Medical Ass'n. v. Board of Review of Department of Labor, 392 Ill. 614, 65 N. E. 2d 350. The court specifically noted in the Murphy case (348 Mo. at page 760) that Clause (F), Section 9423, supra, of the Law "says that corporations are exempt which are organized *and* operated *exclusively*" for the purposes named in the Clause. In other words, in our case, Hospital must demonstrate itself to be *both organized and operated exclusively* for charitable purposes in order to be excluded by the Clause. In disputing Hospital's claim of exclusion from the Law and the consequent exemption or immunity from the payment of contributions, or taxes, Commission is not collaterally attacking Hospital's corporate existence; nor is a determination that Hospital's acts or activities in its operation are *ultra vires* a prerequisite to ascertaining its liability for taxes. Was Hospital organized and is it operated exclusively for charitable purposes? Hospital asserts it was and is. Commission, a tax collecting agency in a sense, has the right in this case to challenge the claim of *immunity* from taxation Hospital seeks to invoke. See and compare Evangelical Lutheran Synod et al. v. Hoehn, 355 Mo. 257, 196 S. W. 2d 134.

The fact that Federal, State, County and City taxing agencies have administratively determined Hospital to be exempt from taxation on the ground it is a charitable corporation would be persuasive if the exemptions were determined upon the same or, in effect, like language in underlying legislation of like purpose; as, for example, the administrative determination of Hospital's exemption from the Federal employment taxes, the exempting section being, in so far as material here, identical with Clause (F), Section 9423, supra. [See 26 U. S. C. A. Sec. 1426 (b) (8), p. 375.] Administrative decisions are entitled to respectful consideration; but, being ex parte, administrative decisions (and opinions and rules) do not have the convincing weight of adjudications ▮ arrived at in sharply contested judicial proceedings and are not controlling. Capitol Building & Loan Ass'n. v. Kansas Commission of Labor & Industry, 148 Kan. 446, 83 P. 2d 106; Park Floral Co. v. Industrial Commission, 104 Colo. 350, 91

P. 2d 492; American Medical Ass'n. v. Board of Review of Department of Labor, supra.

"A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." Jackson v. Phillips, 96 Mass. 539. See also Evangelical Lutheran Synod et al. v. Hoehn, supra; Salvation Army v. Hoehn, 354 Mo. 107, 188 S. W. 2d 826; In re Rahn's Estate, 316 Mo. 492, 291 S. W. 120; and State ex rel. Alexian Bros. Hospital v. Powers, 10 Mo. App. 263, affirmed 74 Mo. 476.

In the case of Nicholas v. Evangelical Deaconess Home, 281 Mo. 182, 219 S. W. 643, the articles of association of the Home stated the objects of the association to be the nursing of the sick and the care of the poor and aged by trained deaconesses; and to found and support a home for deaconesses wherein they could be trained and from which they could be sent as nurses, and wherein sick and aged could be admitted and receive attendance. The charitable character and purpose of the Home clearly appeared in the articles of association; and the parol evidence introduced did not show the Home, in its actual operation, departed from the charitable character and purpose of the organization as shown by its articles of association. In the case of State ex rel. Alexian Bros. Hospital v. Powers, supra, the hospital, which the court did not doubt was a charitable institution, was conducted "by a religious community who devote themselves to the gratuitous care of the sick . . . the indigent poor are its first object." Briefly, it has been said the test in determining whether a hospital or a corporation organized for the purpose of founding and maintaining a hospital is charitable, or otherwise, is whether or not it is maintained for gain, profit, or advantage. 14 C. J. S. Charities sec. 2-e, p. 422. The reading of the Deaconess Home and Alexian Bros. Hospital cases discloses the home and the hospital were conducted without gain, profit, or advantage. But the fact that pay patients are admitted for treatment would not make Hospital the less charitable if the hospital were equally available to those who could not pay and if the income *were used in furtherance of the charitable purpose.* Nicholas v. Evangelical Deaconess Home, supra; State ex rel. Alexian Bros. Hospital v. Powers, supra. See also Evangelical Lutheran Synod et al. v. Hoehn, supra, 196 S. W. 2d, at page 144. It is not considered that the term "charity" in a legal sense is limited to the popular acceptation of the term, that is, the relief of the poor. Salvation Army v. Hoehn, supra; Jackson v. Phillips, supra. (It is not herein said a hospital may be a charitable institution if it refuses

the admittance of the destitute who are in need of hospitalization; but it is plainly seen a charity may be nonetheless a charity if it serves some lower income, although not destitute, class. Salvation Army v. Hoehn, supra.) The public has an interest in the physical and mental well-being of all of the people. And, of course, a corporation organized for the purpose of founding and maintaining an osteopathic hospital would be nonetheless charitable because it might serve only the indefinite number of people, ''the poor as well as the rich,'' in need of hospitalization who desire osteopathic treatment.

█ Hospital's *pro forma* decree of incorporation was under the provisions of the whole article (Article 10, Chapter 33, supra) and did not recite or recognize Hospital's corporate purpose as charitable. While Hospital's charter (see articles of agreement quoted supra) includes the purpose of operating a hospital, or hospitals, the articles are not otherwise expressive of a charitable purpose. Some purposes, additional to that of █ maintaining a hospital, as stated in the articles of agreement are ''to foster and encourage the study and practice of osteopathy'' and to ''buy, sell, mortgage, encumber, lease, and deal in'' realty and personalty ''which may become necessary to provide facilities for the study and practice of osteopathy''; and the fact that Hospital ''provides facilities for the practice of osteopathy'' was also found as a fact by Commission's special representative, whose findings were adopted by Commission. Perhaps all hospitals in some degree further and provide facilities for the practice of the practitioners of some school or schools of the science of healing. But, would a corporation *organized* for the purposes of fostering and encouraging and providing facilities for practice of some school or or schools of the science of healing be a corporation organized *exclusively* for charitable purposes—even though the corporation also had the purpose of maintaining a hospital, and even though no part of the net earnings of the corporation inured to the benefit of a shareholder or private individual?

This brings us to an examination into the meaning of the word ''exclusively'' as used in Clause (F), Section 9423, supra. In cases involving questions of exemption from property taxes under Section 6, Article X of the (former) Constitution of Missouri of 1875; and Section 10937 R. S. 1939, Mo. R. S. A. sec. 10937, it was said ''used exclusively for religious worship . . . or for purposes purely charitable'' has reference to the primary and inherent use as over against a mere secondary and incidental use. Salvation Army v. Hoehn, supra; Y. W. C. A. v. Baumann, 344 Mo. 898, 130 S. W. 2d 499. In examining these cases it has been noticed that the activities of a corporation claiming the exemption must be in accord with the *primary* (exempted) objective and round it out or dovetail into it—though slight, temporary, or in a word immaterial, deviations will not be fatal. Evangelical Lutheran Synod et al. v. Hoehn, supra.

The tax exemption considered in these cases was dependent upon the *use* of the property for those (named) exclusive purposes [although "the owner must (also) be. dedicated to those purposes. To that extent the ownership characterized the use." Evangelical Lutheran Synod et al. v. Hoehn, supra], whereas, in our case, the exemption is dependent upon the *purposes* of Hospital's organization and operation. The objectives of Y. W. C. A. and the Salvation Army in the Y. W. C. A. and Salvation Army cases were both admittedly charitable, and the question was whether their activities conformed. Slight deviations were held not to be fatal. Substantial deviations would have been fatal. Coming back to our case, we were treating with the question of Hospital's *exclusively* charitable organizational purposes. Manifestly the exemption [Clause (F), Section 9423, supra] is in recognition of the great benefit the public derives from institutions exclusively charitable. A substantial non-charitable purpose of Hospital's organization should be fatal. Otherwise, by a non-charitable purpose of organization, a corporation, although it were also organized for a charitable purpose, would or could, in the exercise of its non-charitable power, exploit its non-charitable purpose and destroy or materially shade the fullness of its committed service in the public welfare; and (here more pointedly) all the while defeat the purpose of the Law under. the guise of the charitable purpose. See the import given the word "exclusively" as used in an excluding clause identical with (in so far as material here) and in legislative enactment of kindred basic legislative purpose as the excluding Clause (F), Section 9423, supra, in the case of Better Business Bureau v. United States, 326 U. S. 279, 66 S. Ct. 112, wherein Better Business Bureau was claiming exemption from social security taxes as a corporation organized and operated exclusively for educational purposes within the meaning of Section 811 (b) (8) of the Social Security Act. 42 U. S. C. A. sec. 1011 (b) (8), p. 618. Said the court, "In this instance, in order to fall within the claimed exemption, an organization must be devoted to educational purposes exclusively. This plainly means that the presence of a single non-educational purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly educational purposes."

The purposes of fostering and encouraging and providing facilities for the practice of osteopathy, we believe, are quite clearly professional, and not charitable, in nature; and it should not be held the purposes of fostering and encouraging and providing facilities for the practice of a profession are charitable within the meaning of Clause (F), Section 9423, supra, and such purposes, if they are seen to be substantial purposes of Hospital's organization, should prevent Hospital's exclusion from the purview of the Unemployment Compensation Law. Now intently observe the several clauses of the articles of agreement expressly stating the purposes of fostering and

encouraging, and providing facilities for, the practice of osteopathy. These clauses indicate the purposes stated are substantial objectives of Hospital's organization. Now again carefully search the whole statement of corporate purposes and notice the absence of a clear expression of a plotted, primary, dominant objective to foster and encourage the relief of and provide facilities for the hospitalization of those who are diseased or injured or who suffer constraint in body or mind—this, in our opinion, lends emphasis to and conclusively demonstrates the substantiality of the expressed non-charitable purposes. Nothing here said is intended to be even slightly deprecatory of the science of osteopathy nor do we discount great service osteopathic physicians render to the afflicted. And no one should question the rights of professional men to promote or to provide facilities for their practice or to devote themselves to the fostering and to the encouragement of their particular professional objectives, whereby their practice may become more beneficial to more people as well as more lucrative to themselves. These rights and their exercise, we believe, do not constitute a charitable purpose, although great service in the public welfare may be rendered thereby. Hospital's articles of agreement demonstrate that these objectives were substantial purposes, if not the purposes for which Hospital was organized. It is unnecessary to here particularly examine the evidence relating to Hospital's operations. But it may be said that evidence introduced is substantial and supportive of Commission's findings that Hospital is not operated exclusively for charitable purposes. Moreover, the whole record justifies the conclusions that Hospital was organized and the hospital operated by osteopathic physicians for the purposes of fostering and encouraging and providing facilities for the practice of osteopathy; and that the maintenance of the hospital is but importantly incidental to such purposes.

The judgment affirming the decision of the Unemployment Compensation Commission should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by Van Osdol, C., is adopted as the opinion of the court. All the judges concurs.