CHAMBER OF COMMERCE OF NORTH KANSAS CITY, a Corporation, Appellant, v. UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI, and CARL J. HENRY, HARRY P. DRISLER and ELMER J. KEITEL, SR., Members of the UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI.—No. 40012.—201 S. W. (2d) 771.

Division Two, April 21, 1947.

---

324

*James A. Potter, Judson L. Palmer* and *Simrall & Simrall* for appellant.

*John L. Porter* and *Charles F. Moseley* for respondents; *Michael J. Carroll* of counsel.

WESTHUES, C.—The question presented on this appeal is whether under the Unemployment Compensation Law the Chamber .of Commerce of North Kansas City, Missouri, is required to make contributions with reference to wages paid individuals. The Commission decided that the Chamber of Commerce was liable. On appeal to the Circuit Court of Cole County the decision of. the Commission was affirmed. From that judgment an appeal was taken to this court.

Appellant, Chamber of Commerce, contends that it is exempt from making contributions by virtue of sec. 9423, Mo. R. S. Ann., R. S. Mo., .1939, as amended by Laws of Missouri, 1943, pages 920 and 921, subsections 6 and (F), which read as follows:

"(6) Shall not include:"

"(F). Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual;"

Appellant also contends that it is organized and operated exclusively for charitable and educational purposes and that no part of its earnings inures to the benefit of any private shareholders or individuals. We may dispose of the latter clause, and not mention it further, by stating that no ▇▇▇ earnings ever accrued and therefore none

were ever distributed. Appellant's only income was derived from dues of its members and voluntary contributions.

Appellant was organized by a pro forma decree under the provisions of Art. 10, chapter 33, Mo. R. S. Ann., R. S. Mo., 1939, which permits organization and incorporation for benevolent, religious, scientific, fraternal-beneficial or educational purposes. See sec. 5436, R. S. Mo., 1939, Mo. R. S. Ann. Appellant's charter reads in part as follows:

''Fourth: This association is formed for educational and benevolent purposes in North Kansas City, Missouri, and its trade territory without financial profit to its members.

''The field of education shall include gathering and dissemination of information in relation to the business, industrial, professional, home and institutional life and interests of the community it is intended to serve, providing a meeting place for the discussion of matters of interest, furnishing speakers, and furnishing music and other wholesome forms of entertainment.

''The benevolences shall include the promotion of better streets and highways, better police and fire protection, better business and trade practices, better health and labor conditions, reduction of unemployment, aid in works of charity, promotion of harmony, good will and fellowship throughout the community, encouragement of beautification of homes and public places, and to improve the civic and business life of the community generally.''

The by-laws contain the following:

''The purpose of this Association shall be to promote the welfare of the trade manufacturing interests and industries of North Kansas City and Vicinity, and to contribute to the development and extension of such interests in all lawful ways: to acquire and disseminate valuable commercial and economic information, and encourage greater interest and a better understanding of the importance of manufacturing and trade industries as factors in our growth and prosperity; and to promote just and equitable principles of trade and foster the highest commercial integrity; to increase acquaintanceship among its members and facilitate the speedy adjustment by arbitration of business disputes; to interchange views and secure concerted action upon matters of public interest; to discuss and correct abuses, using the means that may be best calculated to protect the interests and rights of its members as business men and citizens.''

The only regular employees of appellant are a secretary and a janitress. That number would not be sufficient to place appellant under the act. Subdivisions (h) and (i) of sec. 9423, Laws 1943, page 923, provide that eight or more employees constitute an employment unit. However, the members of the Chamber of Commerce evidently possessed good appetites. The record shows that they held weekly or biweekly luncheon meetings. Housewives were employed to prepare

these luncheons. Some of these employees worked about two and one-half hours on the luncheon day, while one cook worked about four hours on Mondays and eight hours on Tuesdays the time of the luncheon. It was at these meetings that the principal educational feature was carried out. The record discloses that speakers were invited and that the subjects discussed varied widely. We will notice these later. It was conceded, in fact it was stipulated that appellant had a sufficient number of employees so as to come within the act. We may, therefore, dismiss this question from our consideration.

The rule generally applied when considering the question of exemptions of the nature now under consideration, that is, on the grounds that the employer is engaged in benevolent, charitable or educational work, is that such an association or organization must be both *organized and operated exclusively* for such purposes. If either fails, then the exemption does not apply. Northeast Osteopathic Hospital v. Keitels et al., 355 Mo. 740, 197 S. W. (2d) 970; Murphy v. Concordia Pub. House, 348 Mo. 753, 155 S. W. (2d) 122; ▇▇ American Medical Ass'n. v. Board of Review of Dept. of Labor et al., 392 Ill. 614, 65 N. E. (2d) 350; Better Business Bureau of Washington, D. C., Inc. v. United States, 66 Sup. Ct. 112. Appellant, however, contends that it came within that rule because it was organized and was operating exclusively for benevolent and educational purposes. The real dispute in this case, is therefore, whether the functions performed by appellant, as authorized by its charter, should be classified as benevolent and educational within the meaning of the Unemployment Compensation Law.

It was conceded and the evidence in this case shows that many of appellant's activities were purely charitable and educational as those terms are generally understood in their restricted sense. That is, they aided the needy in a material way and promoted educational features consisting of lectures on general non-commercial topics. For example, Red Cross collections and the so called United Charity collections were from year to year conducted and supervised by appellant organization. As to the educational features we find that during the course of years some of the topics for discussion were: "Adam's Rib," "Chemical Warfare," "Whither Bound In Higher Education," "Robinson Crusoe's Money," "Marriage And Divorce In Russia," "Cliff Dwellers-Bryce's Canyon," "Treatment of Husband And Wife," and "How To Keep Out Of Jail." Strange as it may seem, among all the varied lectures delivered during the years from September, 1936, to May, 1944, we fail to find one devoted to the subject, "How To Keep From Paying Taxes." Some of the following topics indicate that the subjects discussed were commercial: "What Helps Business Helps You," "How Is Business," "Greater Profits Through Retailer and Manufacturer Cooperation" and "The Master Salesman."

We find that the weight of authority, as evidenced by cases decided, is that if a substantial portion of the activities of an organization is devoted to improving business or to business advantage then the exemption in the Unemployment Compensation Act does not apply. Neither does the exemption apply if the charter authorizes such activity. For example, in the Northeast Osteopathic Hospital case, supra, the court said:

"The purposes of fostering and encouraging and providing facilities for the practice of osteopathy, we believe, are quite clearly professional, and not charitable, in nature; and it should not be held the purposes of fostering and encouraging and providing facilities for the practice of a profession are charitable within the meaning of Clause (F), Section 9423 (i) (6), supra, and such purposes, if they are seen to be substantial purposes of Hospital's organization, should prevent Hospital's exclusion from the purview of the Unemployment Compensation Law."

In the State of Illinois the American Medical Association contended that it was exempted because engaged for scientific purposes. The Supreme Court of Illinois, however, held that the association was not exempt from payments of unemployment contributions because it devoted a substantial portion of its efforts toward protecting and furthering economic benefits to its individual members. See Colony Town Club v. Michigan Unemployment Compensation Commission, 301 Mich. 107, 3 N. W. (2d) 28; American Medical Ass'n. v. Board of Review of Dept. of Labor, supra. So also in New York, in the case of Mohawk Mills Ass'n., Inc. v. Miller, 22 N .Y. S. (2d) 993, where all the earnings of the association were devoted to charity, exemption was denied because the charter did not require this to be done. More direct to the point now under consideration is the case of Boston Chamber of Commerce v. Assessors of Boston, 54 N. E. (2d) 199, 152 A. L. R. 174. In that case exemption from taxation was denied because the organization's charter provided as follows:

" 'The objects of the new corporation shall be to promote the commerce, industry and public interests of Boston, and of New England; to promote and regulate a commercial exchange in the city of Boston; to acquire, preserve and disseminate business information; to adjust controversies and ▇▇▇▇ misunderstandings; to establish and maintain uniformity in commercial usages; and to promote just and equitable principles of trade.' "

Activities of the Chamber of Commerce were held within the charter's provisions. In the State of Tennessee the Supreme Court held, in Memphis Chamber of Commerce v. City of Memphis, 144 Tenn. 291, 232 S. W. 73, that the organization was not exempt from taxation because the charter provided, among other things:

" 'in the improvement of labor conditions, foreign trade and merchant

marine, traffic and transportation, good roads and highways, municipal civic conditions and public health in the city.' ''

The court said:

" 'It is true it is not a corporation for profit, but, as before stated, its primary object is to promote the business and commercial interests of the City of Memphis. This is expressly stated in its charter. We are of the opinion, therefore, that it cannot claim the benefit of the exemption extended to religious, charitable, scientific, or educational institutions. The mere fact that it administers to charity, or may give instructions of an educational nature along certain lines, does not render it an educational or charitable institution in the sense of our Constitution and statute exempting the property of such institutions from taxation.' ''

The Supreme Court of the United States held likewise in the case of Better Business Bureau of Washington, D. C., Inc. v. United States, 66 Sup. Ct. 112.

Appellant cited one federal case in point holding that a Chamber of Commerce should be excluded from taxation such as contributions to Unemployment. The case is, Better Business Bureau of Oklahoma City v. Jones, 34 Fed. Supp. 573, (same case) 123 Fed. (2d) 767. But that case was expressly referred to by the Supreme Court in the case of Better Business Bureau of Washington, D. C., Inc., supra, and the ruling exempting such organizations was disapproved. The federal authorities are bound by the ruling of the Supreme Court.

Viewing appellant's activities, as disclosed by the record, we find that many of them were devoted to purely charitable purposes, however, appellant had the power under its charter and it did in fact promote the trade and commerce of North Kansas City. The evidence disclosed that it was interested in bringing new industries to the community. The evidence showed that a special organization, not directly connected with appellant, furnished what finances were necessary to bring in new industries, but appellant's officers aided in this work by gathering information and attending meetings both at home and elsewhere. Bringing in new industries, promoting just and equitable principles of trade and actively fostering other purposes enumerated in appellant's charter, may all be considered very beneficial to a community and the citizens in general and certainly they are all laudable purposes. However, under the great weight of authority a Chamber of Commerce is not exempt by virtue of our statute from making contributions under the Unemployment Compensation Act. Cases cited, supra. A Chamber of Commerce, as generally understood, is:

"A board or association to promote the commercial interests of a locality, a country, or the like; a society of the principal merchants and traders of a city who meet to promote the general trade and commerce of the place."

It follows that the judgment of the circuit court affirming the decision of the Unemployment Compensation must be and is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.