JACKSON COUNTY MEDICAL SOCIETY, APPELLANT, v. INDUSTRIAL COMMISSION OF MISSOURI, RESPONDENT.—222 S. W. 2d 1948.

Kansas City Court of Appeals. Opinion delivered June 13, 1949.

*Homer H. Berger* and *Morrison, Nugent, Berger, Hecker & Buck* for appellants.

*John L. Porter* and *George Schwartz* for respondents.

SPERRY, C.—The Industrial Commission of Missouri, hereafter referred to as Commission, on June 28, 1946, rendered its decision and order wherein it held that the Jackson County Medical Society, hereafter referred to as Society, was an employer, within the meaning of Section 9423 (h) (1) R. S. Mo. 1939, of the Unemployment Compensation Law, Article 2, Chapter 52 R. S. Mo. 1939, during the calendar year of 1939, and has continued to be such an employer during every year subsequent thereto. The Society instituted this action in the Cole Circuit Court seeking a judicial review of the proceedings and order of the Commission. That court rendered judgment affirming said order.

The public policy of the state with reference to the above law, as declared in Section 9422 thereof, is that the public good and general welfare of the citizens of this state require the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, Section 9427 of the law provides that contributions shall accrue and become payable by each employer, with respect to wages payable for employment. Subparagraph 1, of paragraph (h) of Section 9423; defines an employer as being an employing unit which has or had in employment 8 or more individuals for some portion of a day in each of 20 different weeks. Subparagraph 4 thereof provides that "Any employing unit which, together with one or more other employing units, is owned or controlled by legally enforceable means or otherwise, directly or indirectly, by the same interests, or which owns or controls one or more other employing units by legally enforceable means or otherwise, and which, if treated as a single unit with such other employing units or interests, or both, would be an employer under paragraph 1 of this subsection."

Under paragraph (i) of Section 9423, subparagraphs 6-7 thereof, it is provided that: The term employment shall not include: "* * * service performed in the employ of a corporation, * * * organized and operated exclusively for * * * scientific, * * * or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or individual."

The Society was organized and incorporated under the provisions of Article 10, Chapter 33, R. S. Mo. 1939, which authorizes the incorporation of benevolent, religious, scientific, etc., associations. The stated purpose for its organization and incorporation is scientific and educational. Its members consist exclusively of medical doctors, licensed to practice their profession in the State of Missouri, and who reside and practice in Jackson County.

The Society contends that it is exempt from the operation of the unemployment compensation law because of the last quoted provisions of said law. The Commission found, in effect, that the Society is not exempt from making contributions as provided under the law for the reason that, while it is incorporated under the statutes authorizing the incorporation of scientific and educational associations, it does not operate exclusively as such; that some of its activities are not of that character; and that it wholly owns and controls the Medical Business Bureau, (hereafter referred to as Bureau) a business corporation engaged in collecting medical fees and accounts for members of the association.

It is agreed by the Commission and by the Society that neither the Society alone, nor the Bureau alone, had a sufficient number of employees to bring either under the operation of the law. However, it is also agreed that the total number of employees of the two organizations, combined, is such as to bring the Society within the provisions of the law, if it be held that the Society owns or controls the Bureau.

Thus, two questions are presented: 1. Has the Society forfeited its right to exemption from contributions by reason of the manner in which it operates? and, 2, is the Bureau owned or controlled, directly or indirectly, by the Society, or by the same interests which own or control the Society?

The facts are not in dispute. They are found in the statement and admissions of counsel for the Society, in the testimony of the Society's executive secretary, and in the undisputed documentary evidence.

The Society was shown to have a net worth of $130,906.86, consisting of real estate, books, bonds, cash, and other items. Included therein is listed 100 shares of stock of the Medical Business Bureau, Inc., same being the entire issue of stock of said corporation. For the year 1943, the Society had an income of $44,684.47. $8765 came from dues; $9052.01 came from advertising revenue; $6600 came from Medical Business Bureau, Inc.; $3901 came from collections made for Group Hospital Service, Inc. Total disbursements for 1943

amounted to $35,978.72. Included among disbursements were the following: $3778.50 to Group Hospital Service, Inc.; $6441.94 for printing, cuts, etchings, etc.; $2002.23 for rent; $334.64 for property taxes.

In 1937, and until August 15, 1938, the Society operated the Medical Business Bureau as a collection service for its members. However, it was learned that such an activity could not properly be carried on by the Society, under its corporate powers. Consequently, Medical Business Bureau, Inc., a business corporation, was organized at the instance of the Society. 100 shares of stock were issued. All of said shares, except 3, are held in trust by the chairman of a standing committee of the Society, who is empowered to vote said stock at all meetings of stockholders of the corporation. The other three shares are issued to, and stand in the name of, the three officers of the Bureau, but are indorsed by them so that they, too, remain the property of the Society.

The Bureau is merely a collection agency for members of the Society. If a member of the Society has a patient who lacks ready cash with which to pay his medical expenses, the Bureau seeks ways and means to aid such patient in securing said funds; and aids the doctor in collecting his fees. The officers of the Bureau are all members of the Society and they direct the course and activities of the Bureau; but the Society maintains a standing committee whose stated duty is to advise with the officers of the Bureau in policy making and functioning. The furniture with which the Bureau began business was given by the Society. The Society and the Bureau occupy offices in the same building and use a common waiting room. At one time the executive secretary of the Society devoted a great deal of time and attention to the affairs of the Bureau, but the evidence was to the effect that, at the time the hearing was held, the paid employees of the respective corporations do not aid each other in their work. The Bureau paid to the Society a sum of $6600, as overhead expenses, for the year 1943.

Counsel for the respective parties do not differ materially as to the law governing the Society's right to exemption. The rule is that the Society must be both organized and operated exclusively for educational and scientific purposes. Chamber of Commerce v. Unemployment Compensation Commission, 356 Mo. 328, 201 S. W. 2d, 771, l. c. 772; Chesed Shel Emeth Society v. Unemployment Compensation Commission, 203 S. W. 2d, 454, l. c. 458. However, in order to be deprived of its exemption it is necessary that an operation on which it engages and which is not educational, scientific and charitable, must be substantial in nature. Chesed Shel Emeth Society v. Unemployment Compensation Commission, supra; Northeast Osteopathic Hospital v. Heitel, 197 S. W. 2d, 970, l. c. 976.

The Society contends that it does not, either directly or indirectly control the Bureau, and that it and the Bureau are not owned or controlled by the same interests. We think the evidence tending to prove the contrary is overwhelming. The Society set up a Medical Business Bureau as one of its regular sub organizations. It was operated as an arm of the Society, inferentially performing the same identical services that are now performed by the Bureau. It was learned that the Society could not legally operate a collection agency for the benefit of its members, so it proceeded to have its Medical Business Bureau incorporated as a business corporation. The new corporation performed the same services that were performed by the old, and for the same people, to wit: the individual members of the Society. The Society owns and votes every share of stock. It created the Bureau and it can, at will, take away the life that it created. One of its standing committees advises the Bureau's board of directors as to policies and functions. Three of its members, who constitute the Bureau's board of directors, execute those policies and functions. The Society says that the Bureau's board may legally refuse to do what the Society's committee recommends. In the unlikely event that the creature should refuse to do the bidding of its creator, it remains only for the creator, through its trustees, to change the board of directors of the creature, which, we have no doubt, would be done. Insistence to the contrary does not appeal to reason or common experience. Indeed, in the printed charter and by-laws of the Society the following appears: ''Through the Medical Business Bureau, Inc., *a unit of the Society,* specialized credit and collection service is maintained.'' (Emphasis ours).

We hold that the Society owns or controls the Bureau, and that both are owned or controlled, directly or indirectly, by the same interests, that is, the members of the Society.

Is the Society being operated exclusively for educational and scientific purposes? We have held that it controls and, in effect, owns and operates the Bureau. That operation is purely a business operation. It is, in no manner, educational or scientific. Nor is such an operation of a charitable nature. The services performed by the Bureau were strictly commercial, namely, the collection of fees due the members of the Society for professional services rendered by them as individuals. ''* * * and it should not be held the purpose of fostering and encouraging and providing facilities for the practice of a profession are charitable within the meaning of Clause (F), Section 9423 (i) (6) supra, and such purposes, if they are seen to be substantial purposes * * * should prevent * * * exclusion from the purview of the Unemployment Compensation Law.'' Northeast Osteopathic Hospital v. Keitel, supra, l. c. 977.

Society contends that it is not shown that any of its operations were non-charitable and, if so, that such operations were of a substantial

nature when the whole of its operations are considered. It cannot be said that managing and operating a collection bureau for the use and benefit of virtually all of the medical doctors of Jackson County is a minor operation. The Bureau contributed $6600 to the Society, in 1943, for overhead expenses of the latter. It is not shown just what overhead expenses were to be paid out of this sum; but it is noted that the amount so contributed was for more than the entire amount paid by Society for rental and property taxes for that year. It amounted to more than 1/6 of its expenditures for all purposes. The following expenditures should be eliminated from the total expenditures listed for the year 1943, in arriving at the real cost of its operations: Group Hospital Service, Inc., disbursement of funds collected from the members for their hospital insurance; securities purchased; printing, cuts, etchings, etc., presumably for use in its publication (paid advertisements appearing therein returned the Society almost $3000 profit on that operation.) When these items are eliminated it will be found that the Society's revenue from this Bureau was equal to more than 1/4 of the Society's actual expenses for that year. Probably the percentage would be even higher if we could analyze an item representing an amount of $5743, shown as ''Transfers to other funds.'' We think this one operation alone, that is, Bureau, constitutes a substantial deviation from operations claimed to be devoted exclusively to charitable, educational and scientific purposes.

The Society collected $3901 for Group Hospital Service, Inc. This money was collected from Society's members, and $3778.50 thereof was disbursed for them, by the Society. Certainly this was not an insignificant part of the duties and employment of the Society's employees; nor was this service of a charitable, educational, or scientific character.

The Commission found that the Society's legislative activities were not of the character for which it may claim exemptions. However, the evidence on this point is inconclusive. It has been held that legislative activities of the membership of a corporation organized under statutory authority similar to that under which the Society was organized, might constitute an activity outside of the fields of charity, education and science. Slee v. Commissioner of Internal Revenue, 42 F. 2d, 184. However, we cannot determine, from the evidence, that such legislative activities as were engaged in were or were not of such a character. Hence we do not rule that point.

It is seriously contended that the very constitution, by-laws, and stated objectives and purposes of the Society indicate, as a matter of law, that it is not *organized* exclusively for charitable, educational and scientific purposes. Many authorities are cited in support of this contention, and they are of such weight as to strongly support the contention. However, since the Commission did not rest its de-

cision and order on this point, we do not deem it advisable or necessary to rule the question.

The judgment should be affirmed for the reasons herein stated. Boyer, C., concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. *Dew, P. J., Cave, J.,* concur; *Vandeventer, J.,* (sitting by order of Supreme Court) concurs.