ST. LOUIS LODGE NO. 9, B. P. O. E., Appellant, v. EDMUND KOELN, Collector.

**Division One, December 2, 1914.**

TAXATION: Constitutional Question: Elk's Club Rooms Not Exempt. Premises owned by the Benevolent and Protective. Order of Elks, and used for the entertainment and refreshment of the members and their guests, are not exempt from taxation under the provisions of Sec. 6, Art. 10, of the Constitution, exempting lots used exclusively for purposes purely charitable.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock*, Judge.

AFFIRMED.

*Brownrigg & Mason* for appellant.

*Edward W. Foristel* and *Frank H. Haskins* for respondent.

BROWN, C.—This is a suit to cancel a tax bill issued against a lot in the city of St. Louis for city and school taxes for 1912. The lot is owned by the plaintiff and occupied exclusively by a building containing its lodge room, a hall used by the members and their wives, daughters and friends for entertainments such as dancing, card or other social parties, a rathskeller, where meals and other refreshments, including liquors, are served to the members and such guests as by the rules of the lodge they are permitted to entertain there, and an auditorium in which vaudeville and similar entertainments, including on one occasion a boxing exhibition, are given for the entertainment of the members and their guests. There are also billiard and card rooms for similar use. No admission fee to the entertainments is charged.

The general constitution of the order to which the lodge belongs states that it is established ''to inculcate the principles of charity, justice, brotherly love and fidelity; to promote the welfare and enhance the happiness of its members; to quicken the spirit of American patriotism; to cultivate good fellowship; to perpetuate itself as a fraternal organization.'' The bylaws of the plaintiff lodge provide for the relief of destitute and unemployed Elks to the extent of ten dollars per week out of the funds of the lodge. A liberal construction has been given to this rule and by reason of the fortunate rarity of destitute Elks it has been tacitly extended to cover general charities without limit as to the amount, and in winter, and especially at Christmas time, large sums have been raised from the voluntary contributions of members to be dispensed for such purposes, and for Christmas gifts to children who, it is presumed, would not otherwise be able to partake of the pleasures of that blessed season. Their entire lodge fund, arising from membership dues and including the profits upon refreshments, except the sinking fund provided for the payment of the amount unpaid upon the property in question, has been devoted to these charities.

The lodge is incorporated under the State law providing for the incorporation of benevolent, religious, scientific, educational and miscellaneous associations.

The only question presented for our consideration is whether or not the property in question is exempt from these taxes because it is used exclusively for purposes purely charitable within the meaning of that expression as used in section 6 of article 10 of our State Constitution.

In construing this same section this court recently said: ''It must be conceded to the state that whether a tax-exempting clause be viewed from the standpoint of the State down to the people, or from the standpoint of the people up to the State there must be unbending

and inviolate rules which as sure words of the law are always .to be reckoned with; and those rules (from the standpoint of the State) are that an abandonment of the sovereign right to exercise the vital power of taxation can never be presumed. The intention to abandon must appear in the most clear and unequivocal terms (Pacific Railroad v. Cass County, 53 Mo. l. c. 27) ; and from the standpoint of the people they are that equality is equity in taxation." [State ex rel. v. Johnston, 214 Mo. 646, 662.] The same rule is distinctly stated in the cases cited in that opinion, as well as in State ex rel. v. Casey, 210 Mo. 235, 248. It is a just and reasonable one, and whatever may be the doctrine of the adjudications in other jurisdictions, must be taken as the well-settled law, of this State.

There can no question as to the charitable character of the defendant lodge, nor of its disposition in that respect. While the property is used as the meeting place of the lodge where all its regular business is transacted, it also affords to the members and their families, free of cost, the most liberal facilities for social enjoyment and the entertainment of their guests, and to the unfortunate bachelor member and transient brother, for compensation, something like the culinary and table advantages of home. The surplus of its lodge funds, whatever that may be, together with large sums voluntarily contributed by its members, is dispensed, through the activities of the lodge organization, in the relief of the needy. Were the virtues of human sympathy and helpfulness grounds for the exemption of one's property from the common burden of taxation, the plaintiff would stand upon firm ground while urging its claim for relief. There are, however, others whom we have enjoyed the pleasant privilege of knowing, who might stand upon the same ground and urge a similar claim. For them the home has not only been the instrument and abiding place of their own personal comfort, but they have opened its doors to helpless and

deserted or orphaned children whom they have nurtured and educated to be good and useful citizens of the State, and have spent their income, and in some cases more, in dispensing aid to the destitute and suffering. Perhaps one of the brightest virtues of these has been the instinctive patriotism evident in their willingness to share in the burden assumed by the government in protecting them in the life they have chosen and in educating their children.

It is evident that the constitutional exemption before us has no reference to the character and activities of the owner except in so far as those activities relate to the use of the property. For instance, the same sentence of the Constitution we are considering exempts from taxation property used exclusively for religious worship; yet it is evident one might have family worship in his own residence from morning until night, except at such times as he should step out for a few moments to evangelize his neighbors, without changing in the least the character of the property as his residence, or exempting it from taxation on the ground that it was used exclusively for religious worship. The worship would be an incident to the residence in the property of a pious, God fearing man, given to the observance of such duties. If on the other hand the building were a church, devoted to public worship, and the owner should reside in it in the capacity of pastor in charge and caretaker of the premises, the condition would be reversed; for the occupation would be an incident to and a part of the religious use. This distinction is clearly illustrated and interestingly discussed in State ex rel. v. Johnston, supra, and cases cited therein at pages 663 et seq.

This house is used, as the plaintiff's secretary tells us in his testimony, for lodge and club purposes, and seems to be well and liberally calculated for that use. The constitutional exemption requires that the property be "exclusively" used for purposes "purely"

charitable. This "exclusive" use implies that all other uses be excluded. This exclusion naturally applies to vaudeville, boxing, dancing, billiards and cards for the amusement of the owners. It might, under some circumstances, be said that all these things may be used to raise money for charitable purposes; but here the shoe is on the other foot. We are told in the testimony that these things are all *free.* No fee is charged for entrance to the shows, or to the dances, or for billiards or cards. These must be paid for out of the funds of the lodge, and consequently constitute uses not incidental but paramount to the charities. When the lodge has used the hall for a dance, and has paid the fiddler, then charity may come for the crumbs. The exempting use must also be "purely" charitable—charity which, according to Webster, is *unmixed* with any other element. Charity is not a promiscuous mixer. Here she modestly stands outside or goes her way and waits; waits until the plaintiff has finished using the spacious and comfortable rooms for the pleasure of its members; waits until the curtain has fallen upon the last scene of the vaudeville performance on the stage; until the dancers have tired and gone home; until the billiard rooms have been deserted to the markers; until the plaintiff has paid the cost of its own entertainment, and goes out and finds her, and hands her whatever it may have left in its pocket. She gets not the *use* of the premises, but what remains of income to the owners after they have used it in carrying out the injunction of their organic law, by promoting their own welfare, enhancing their own happiness, and cultivating their own good fellowship among themselves. Like the Supreme Court of Wisconsin in Green Bay Lodge v. Green Bay, 122 Wis. 452, we do not find the maintaining of a club house to be a purely charitable use. Were this true, as that court remarked in its opinion, "then any number of men may organize themselves into a corporate body to provide these privileges and

benefits for themselves and their guests and claim the exemption of the statute.''

After what we have said it is unnecessary to notice further the Utah case of Salt Lake Lodge v. Groesbeck, 40 Utah, 1, in which it was held that a law exempting property of this character from taxation should be liberally construed. We are satisfied with our own rule in that respect.

The judgment of the circuit court for the city of St. Louis is affirmed. *Blair, C.,* concurs in result.

PER CURIAM.—The foregoing opinion by BROWN, C., is adopted as the opinion of the court. All the judges concur, *Bond, J.,* in result.