BAPTIST HOSPITAL *v.* CITY OF NASHVILLE.*

(*Nashville.* December Term, 1927.)

Opinion filed March 31, 1928.

1. CHARITY.

In legal parlance the word "charity" has a much wider significance than in common speech. (Post, p. 592.

Citing: 5 R. C. L., 291.

2. TAXATION.  CHARITABLE INSTITUTIONS.  EXEMPTION.

A charitable institution does not lose its charitable character, and its consequent exemption from taxation, merely because recipients of its benefits, who are able to pay, are required to do so, where funds derived in this manner are devoted to the charitable purposes of the institution. (Post, p. 593.)

Citing: 11 C. J., 303, 304, note 70 (a); 5 R. C. L., 334, 373; M. E. Church, South v. Hinton, 92 Tenn. (8 Pick.), 188.

---

*Headnotes 1. Charities, 11 C. J., section 9; 2. Taxation, 37 Cyc., p. 929.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County.—HON. JAS. B. NEWMAN, Chancellor.

A. G. EWING, for Hospital.

J. WASHINGTON MOORE, J. CARLTON LOSER, CHAS. GILBERT, RICHARD GLEAVES and O. M. GOLDEN, for appellants.

---

*On exemption of charitable organization from taxation or special assessment as affected by receipt of pay from beneficiaries see annotation in 34 A. L. R., 637; 26 R. C. L., 317; 6 R. C. L. Supp., 1548.

Mr. Justice McKinney delivered the opinion of the Court.

The question involved is the right of the City to tax the property of the complainant. It is conceded that it has no such right if the property is used exclusively for charitable purposes.

The Baptist Hospital is a corporation created August 16, 1924, under chapter 97, Acts of 1923, which is an amendment to the general incorporation Act of 1875, the pertinent provisions of its charter being as follows:

"This corporation shall have the power to establish, maintain and conduct a hospital or sanitarium for the care and treatment of sick, diseased and disabled persons, to provide for the requirements of admission, the manner of receiving, caring for and discharging patients and making a reasonable charge for the same. It shall have full power and authority to elect such officers as it deems necessary, to employ superintendents, doctors, internes, nurses, agents and such subordinate employees as may be necessary for the proper conduct of the institution, and to do any and all things necessary or proper in carrying out the purposes and objects of the corporation.

.　.　.　.　.　.　.　.　.　.　.　.

"The purpose of the organization of this corporation is for the general welfare, and not for profit, and any income derived therefrom shall not be paid out on dividends to any person or corporation, but shall be used for general welfare purposes, and only for the purposes of such institution organized hereunder."

The corporation is controlled by a Board of Directors, chosen by the Tennessee Baptist Convention. It owns a

large building at the corner of Union Street and Eighth Avenue in the City of Nashville, which it operates as a hospital.

The essential facts, set forth in the stipulation of counsel, are as follows:

Section 12. "It is stipulated and agreed that the Baptist Hospital went into possession of the property on September 22, 1924, and has since held and used it under its charter. It charges fees for all hospital services rendered to about eighty-five or ninety per cent of all patients. It does not charge fees for the hospital services rendered to from ten to fifteen per cent of patients admitted, who are needy poor persons. Any reputable white physician or surgeon has the privilege of the use of the hospital facilities in the care and treatment of his patients admitted to the hospital, upon the payment by such patients of the fees charged by the hospital. The fees of such surgeon or physician are matters of private agreement between him and his patients. The hospital, as conducted by the Baptist Hospital, is equipped with the modern, scientific appliances and services, usual to modern hospitals of first class standing. It has a nurses' school, maintained in connection with the hospital, and issues diplomas or certificates to graduates of such school. The undergraduate nurses in the school are employed and trained in the hospital, and receive a moderate compensation for their work and service during such employment and training in the hospital."

Section 13. "Only white persons are admitted to the hospital conducted by the Baptist Hospital, and no persons suffering from contagious diseases are admitted as patients."

Section 17. "It is stipulated and agreed that the Baptist Hospital charges fees based on cost and reasonable upkeep, renewals, and gradual extensions, and that the Hospital since it took possession has been operated at a loss, until the past several months, during which the complainant, Baptist Hospital, operated at a profit."

*(1)* The meaning of the term "charity" is thus stated in 5 R. C. L., 291, to-wit:

"A precise and complete definition of a legal charity is hardly to be found in the books, but it is certain that in legal parlance the word 'charity' has a much wider significance than in common speech. Probably the most comprehensive and carefully drawn definition of a charity that has ever been formulated is that it is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature. Another definition capable of being easily understood and applied is that given by Lord CAMDEN as follows: 'A gift to a general public use, which extends to the poor as well as the rich.' The theory of this is that the immediate persons benefited may be of a particular class, and yet if the use is public in the sense that it promotes the general welfare in some way, it has the essentials of a charity. Again, charity has been declared to be active goodness; the doing good to our fellow men, fostering those institutions that are

established to relieve pain, to prevent suffering, and to do good to mankind in general, or to any class or portion of mankind.''

*(2)* The courts are practically unanimous in holding that a charitable institution does not lose its charitable character, and its consequent exemption from taxation, merely because recipients of its benefits, who are able to pay, are required to do so, where funds derived in this manner are devoted to the charitable purposes of the institution.

With respect to such corporations we quote from 11 C. J., 303, as follows:

''Their principal and distinctive features are that they have no capital stock and no provision for making dividends or profits, but derive their funds mainly from public and private charity and hold them in trust for the object of the institutions. In other words, the test of whether an enterprise is charitable is whether it exists to carry out a purpose recognized in law as charitable, or whether it is maintained for gain, profit, or private advantage. The nature of the corporation, as well as its purposes and objects, must be determined from its charter or articles of association, and cannot be shown by extrinsic evidence. Provided a corporation or association can otherwise be classed as a charitable one, the fact that it receives pay from some of the students, inmates, patients, or other persons to whom it extends benefits detracts nothing from its character as a purely charitable institution. The original eleemosynary character of the institution is not transformed by this patronage, even if sufficient to relieve it from financial burdens, but the charity as established remains unaffected.''

Many cases supporting the text will be found in the notes; also in the annotation in 34 A. L. R., beginning on page 637.

The fact that a hospital maintained by a railroad corporation for its employees is in part supported by monthly contributions from all its employees does not deprive it of its character as a charity. 11 C. J., 304, note 70 (a).

The same is true where the hospital is entirely maintained by the railroad company, but without profit. 5 R. C. L., 373.

The establishment of hospitals is, in fact, one of the objects enumerated in the statute of charitable uses. 5 R. C. L., 334.

The foregoing principles of law were approved by this court in *M. E. Church, South,* v. *Hinton,* 92 Tenn., 188, and previous decisions referred to therein.

It can hardly be urged at this period in our development that such an institution is not a charity. Hundreds of religious and benevolent organizations conduct drives, solicit donations and in other ways raise large sums of money for the express purpose of building, equipping and operating hospitals. The donors make their contributions knowing that they will receive no pecuniary benefits in return. Such gifts cannot be otherwise denominated than charities, the clear intention of the donors being to provide for those unfortunates who are sick, diseased and disabled and without means to procure necessary medical care and treatment. Those who are able should pay, for, by so doing, it enables the institution to care for more persons who are unable to pay.

The complainant's predecessor in title, the Woman's Hospital of America, was also a charitable corporation.

Finding no error in the decree of the Chancellor it will be affirmed.