St. Louis Council, Boy Scouts of America, a Corporation, Appellant, v. Martin A. Burgess, Assessor of the County of Jefferson, Missouri, W. Dwight Schubel, Collector of the County of Jefferson, Missouri, and John Becker, John H. Brimmer and Morris Sweet, as the County Court of Jefferson County, Missouri, Respondents, No. 41874—240 S. W. (2d) 684.

Court en Banc, June 11, 1951.

*Harry A. Frank, Will B. Dearing* and *M. C. Matthes* for appellant.

148

*J. E. Taylor,* Attorney General, and *Arthur M. O'Keefe,* Assistant Attorney General, for respondents; *J. W. Thurman* of counsel.

HOLLINGSWORTH, J.—Appellant, alleging it owned two tracts of real estate in Jefferson County, Missouri, actually and regularly used exclusively for purposes purely charitable and not held for private or corporate profit, brought this action to have said property declared exempt from taxation under the Constitution and laws of Missouri, and to cancel and restrain the collection of taxes assessed and levied thereon for the years of 1948 and 1949. Respondents are respectively the Assessor, the Collector, and the Judges of the County Court of Jefferson County. The trial court found the issues in favor of appellant as to a tract of 255 acres, known as the Lions Den Reservation, but found against it as to 1170 acres of a 2300 acre tract known as the Louis Beaumont Reservation, the remaining 1130 acres of which lie in the adjoining County of St. Louis. From the adverse judgment as to that part of the Louis Beaumont Tract lying in Jefferson County, this appeal was taken.

Pursuant to the provisions of Section 6 of Article X of the Constitution of 1945, the Legislature, in 1945, enacted RSMo § 137.100, declaring that "all property, real and personal, actually and regularly used exclusively * * * for purposes purely charitable, and not held for private or corporate profit shall be exempted from taxation * * *; provided, however, that the exemption herein granted shall not include real property not actually used or occupied for the purpose of the organization but held or used as investment * * *", etc.

Appellant contends the evidence clearly established that the Beaumont Reservation, as well as the Lions Den Reservation, was held and actually and regularly used exclusively for purely charitable purposes. Respondents concede that the judgment exempting the Lions Den Reservation from taxation is correct. They insist, however, that the evidence does not show the Louis Beaumont Reservation was *actually* used to such an extent as to warrant its exemption.

Respondents forthrightly concede that: (a) "It further appears from the rules laid down in Salvation Army v. Hoehn, 354 Mo. 107, 188 S. W. (2d) 826, and Bader Realty & Investment Co. v. St. Louis Housing Authority, 358 Mo. 747, 217 S. W. (2d) 489, that the Boy Scouts of America are organized for 'purposes purely charitable' "; and (b) "The evidence shows that 'very few week ends pass without at least ten troops and 100, or more, boys using the Louis Beaumont Reservation', and such use would appear to fulfill the requirements of the statute that the property be 'regularly' used."

Respondents then state: "The question involved, as it appears to respondents, is as follows: Is real property owned by a charitable organization, part of which is used for charitable purposes and part of which is not used for any purpose whatsoever, exempt under the Constitution and statutes of Missouri?"

The issues are thus narrowed to the determination of whether the Louis Beaumont Reservation is actually used for scouting purposes to the extent contemplated by the statute. The evidence shows, and it is not otherwise contended, that no part of it is held or used for private or corporate profit. All of the evidence was adduced by appellant. Respondents do not question its accuracy or credibility. They question only its sufficiency and it is apparent the trial court determined the issue against appellant as to the Louis Beaumont Reservation solely on the ground that the present actual user of the land did not justify its exemption from taxation.

 Statutes authorizing exemptions of property from taxation are strictly, but reasonably, construed. Salvation Army v. Hoehn, 354 Mo. 107, 188 S. W. (2d) 826, 829; In re Burroughs Estate, 357 Mo. 10, 206 S. W. (2d) 340, 344; Missouri Goodwill Industries v. Gruner, 357 Mo. 647, 210 S. W. (2d) 38, 39. Actual and regular user for such purposes must be proved. Mere prospective user is not sufficient. 51 Am. Jur., Taxation, § 545, p. 542; National Cemetery Association of Missouri v. Benson, 344 Mo. 784, 129 S. W. (2d) 842, 845; Evangelical Lutheran Synod v. Hoehn, 355 Mo. 257, 196 S. W. (2d) 134, 143.

 Appellant is a chartered and corporate unit of the National Boy Scouts of America. Its field of operation, known as the St. Louis Council, comprises the City of St. Louis and Counties of St. Louis, Lincoln, Warren, St. Charles, Franklin, Dent, Crawford, Iron, Reynolds, Washington, Jefferson, St. Francois and Ste. Genevieve. This area is divided into nineteen districts, each of which has an executive board. The St. Louis Council uses the services of approximately 6500 adult leaders, 2300 of whom are leaders of troops, packs and senior groups, or serve as den mothers. They are volunteers and serve without compensation. There is also a professional staff of twenty-three trained scout executives that advises and assists these leaders in the promulgation of the scouting program.

Appellant owns or operates six camps in the Counties of St. Louis, Washington, Franklin, Jefferson and St. Charles. All of these properties have been exempted from taxation except that portion of the Beaumont Reservation in Jefferson County and here under consideration. The Beaumont Reservation of 2300 acres was acquired by purchase in December, 1947, with funds donated by the Louis D. Beaumont Foundation of Cincinnati. Since its purchase, roads have been laid out and a water system established.

The purpose for which appellant is organized and functions throughout America is to promote the ability of boys to do things for them-

selves and others, to train them in scoutcraft, to teach them patriotism, courage, self-reliance and kindred virtues. Its program calls especially for training and experience out-of-doors, in camp and on the trial, to develop skills contributing toward physical fitness, resourcefulness and self-reliance. In 1948, the St. Louis Area served 27,000 to 28,000 boys, of which at one time 21,000 or more were record members.

In scouting, boys are included from the age of eight years up. The younger boys are known as Cubs and attend camps for picnics and one-day outings under the supervision of cub masters and den mothers. At age eleven they may become Boy Scouts and continue as such until fifteen. The third group is the Senior Scouts. Most of their activities are outdoors and they use the camps continuously. The camps are also used to train adults to serve as leaders.

The Lions Den Reservation, with eight camp sites, is not adequate for present needs. Boys have been turned away. Two years ago only twenty-five per cent of the available boys in the St. Louis area were encamped. There are some 92,680 boys in the St. Louis area. The Council is striving to attain a membership of, and serve, 50,000 boys. From a percentage standpoint, the St. Louis Council is one of the lowest of the large councils in America in this respect. One of the reasons for acquiring Beaumont Reservation was to make possible the encampment of fifty per cent of the available boys. There are two types of camps: long term camps and short term camps. Lions Den is used continuously, on weekends, each of the fifty-two weeks in the year and for long term camps in the summertime. For a long time there has been a need of property close to St. Louis where the boys could go for short term camps. It is hoped Beaumont Reservation will be the answer to the problem.

The Beaumont Reservation is mostly rough, wild, wooded hill country, with one central valley of four or five hundred acres. It has deer, turkeys and other wild life on it. As yet, it has no camp buildings on it, but is used every weekend for Boy Scout troops and for training adult leaders. It is always open and all of the property is available for use. Very few weeks pass without at least ten troops and one hundred, or more, boys using the camp. Five or six hundred frequently use it. More than a thousand have used it on occasions. All of the ground is used, and used exclusively, for scouting purposes. The boys tramp over all of it. The camp is on level ground, but all of it is used for nature trips and hikes. On the second class scout test, the boys must hike five miles. Their trail is laid out on the site at Beaumont. Here are carried out the scout tests. For the boys to qualify for any of their scout ranks they have to go to camp and do a great deal of outdoor work. The purpose of the outdoor camp is to provide facilities, to take the boys out where swimming is safe, where there are directors to assist with the whole camp program. The attainment of the progressive ranks of tenderfoot, second

class, first class, star, life and eagle scout, as well as to attain one hundred or more merit badges, requires, among other activities, outdoor life, nature study, pioneering and swimming.

There is no evidence that only a part of Beaumont is used. There is no evidence that it is being held for prospective use, although the evidence does show a more extensive use is contemplated.

Does the evidence show that the present user of the Beaumont Reservation brings it within the exemption statute? The evidence does not show that the entire acreage is actually occupied at all times, and we do not believe it necessary that it should in order that it be exempt. User to that extent would destroy the very purpose for which it is operated. Nature and wild life study and its use for out-of-doors living and hiking would then of necessity be abandoned. It would have reached a point where it could not be so used—"the point of no return". The mere fact that as yet it is not used to its full capacity or that it will be further developed as funds are available and more boys come into scouting does not in the least detract from its present actual, regular and exclusive use for purposes purely charitable. It would be too narrow a construction of the tax exemption statute to hold that all of its property must at all times be used to its capacity to come within the purview of the statute. In other words, the evidence shows a present need for all of the property. It shows a present, actual, regular and exclusive user of all of the property for purposes purely charitable and that no part of it is held or used as an investment. The statute requires no more. We have found no case in point on the facts, but the following are fairly analogous: United Presbyterian Women's Association v. Butler County, 110 Pa. Super. 116, 167 Atl. 389, 392; Trenton Ladies S. B. Society v. City of Trenton, 19 N. J. Misc. 176, 17 Atl. (2d) 809, 810; Camp Emoh Associates v. Inhabitants of Lyman, 132 Me. 67, 166 Atl. 59, 60-61; Cedars of Lebanon Hospital v. Los Angeles County, Cal., 206 Pac. (2d) 915, 923, 924.

The cause is reversed and remanded with directions to enter judgment as prayed in the petition. All concur.