No. 38,689

The A. T. & S. F. Hospital Association, *Plaintiff*, v. The State Commission of Revenne and Taxation and William Gough, Jr., Dale A. Fisher and O. W. Schwalm, as members of said Commission, *Defendants*.

(246 P. 2d 299)

Opinion filed July 3, 1952.

*Marlin S. Casey* and *William M. Mills, Jr.,* both of Topeka, argued the cause and were on the briefs for the plaintiff.

*Wilbur G. Leonard,* of Council Grove, and *C. C. Rankin,* of Lawrence, argued the cause and were on the briefs for the defendants.

The opinion of the court was delivered by

Smith, J.: This is an original action in mandamus wherein the plaintiff seeks to have its real and personal property removed from the tax rolls. We issued an alternative writ. The facts were agreed on. The cause was submitted on the merits.

The petition alleged the incorporation of plaintiff as a corporation without capital stock and not for profit; the ownership of certain described real estate and certain personal property being used exclusively for charitable and benevolent hospital purposes; that about May 19, 1951, plaintiff made application to the defendants, claiming exemption from taxation under article XI, section 1, of the constitution of the state and praying for a refund of its 1950 taxes; that on December 17, 1951, defendants, the tax commission, made an order denying relief; that such action was arbitrary, unreasonable and in violation of article XI, section 1, of the constitution of the state, which provides:

"All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes . . . shall be exempted from taxation."

The petition alleged there was the plain duty upon defendants to order such property stricken from the tax rolls; that the statement of

facts, testimony and exhibits offered by plaintiff at the hearing contained all the facts pertinent to the question to be decided and were not in controversy; that plaintiff as a matter of right was entitled to the exemption, had no adequate remedy at law and unless the writ was allowed would suffer irreparable damages.

The prayer was that a writ issue commanding defendants to issue an order declaring the property to be exempt and to refund the 1950 taxes. Certain documents were attached as exhibits.

The defendants filed a motion to quash the writ on the ground that it and the motion did not contain facts sufficient to constitute a cause of action against defendants or any ground for the issuance of a writ. Defendants placed this motion on five grounds: first, that the plaintiff had a plain and adequate remedy at law; second, that the writ and the motion therefor conclusively disclosed that the alleged grievance of the plaintiff was given full, complete, adequate and impartial consideration by the defendants; and that the plaintiff had no clear, specific and definite right to the performance of the acts commanded by said writ; third, that plaintiff's motion for writ showed on its face that the order of the defendant, the state commission of revenue and taxation, was based upon, was consistent with and was substantiated by the evidence submitted to the commission by the plaintiff; fourth, that the acts sought by the writ to be commanded and controlled were discretionary duties imposed upon the defendants by sections 79-1701, 79-1702 and 79-1702a, G. S. 1949, and plaintiff was not entitled, as a matter of law, to a *de novo* consideration of its case, substituting this court for the defendant commission; and fifth, that the plaintiff had failed to prove that the property in question was used exclusively, immediately and directly for a purpose which is exempt from taxation under either the constitution or the statutes of the state.

At the hearing before the commission there was a statement of facts that plaintiff owned and operated a hospital on the real estate in question; that it was erected in 1894 at a cost of $145,000 and in 1896 the railway company donated $30,000 toward the construction. The history of the development of the board of trustees, which controls the plaintiff, was given, but we find it necessary to make note only that at the present time the board of trustees consists of seven members who serve without salary, three of these are the persons who occupy the positions of General Manager Eastern Lines, General Manager Western Lines and the Chief Mechanical Officer of

the company, while the other four members are employees who must be general chairmen or vice general chairmen of one or the other of the organizations representing the employees; that with this arrangement the effective control of the hospital passed from the hands of the officials of the railway company to the hands of representatives of the employees; that no profit accrues to anyone by reason of the operation of the hospital; that it is one of thirty-two nonprofit hospitals in the state; the statement set out the amount contributed to the association, the railway company, yearly from 1942, when $45,977.27 was contributed to 1950, when $129,862.07 was contributed; that this was used in the operation, maintenance and improvement of the hospitals; that no part of the property is used other than for hospital purposes; that the hospital has a capacity of 175 beds, employs 151 persons, and with the exception of the chief surgeon, who receives a small stipend from the railway company, all employees are paid by the association; the railway has 4,025 employees in Shawnee county and 15,939 in the state (all these employees are contributing members and are entitled to the services of the hospital); that during 1950 the hospital admitted 3,178 bed patients and treated 24,295 out patients and performed 600 surgical operations; the primary purpose was to offer medical services to employees of the railway company; during the two years before the commencement of this action thirty-six patients, not employees, were hospitalized and ten were given medical treatment as out-patients; the patients are authorized hospitalization for varying periods of time based upon the length of time they have been members of the association (however, the hospital has always permitted patients to remain without cost to themselves far beyond their allotted time); during 1949 and 1950 such contributions amounted to $9,424.46; the hospital is a member of the American Hospital Association, the Kansas Hospital Association and is approved by the American College of Surgeons; the hospital participates in teaching students to become medical technologists and pays salaries to these students during the twelve-month internship period; the association was granted exemption from state income taxes, in accordance with G. S. 1949, 79-3204; is exempted from payment of federal income taxes; is exempted from payment of state sales taxes and is permitted to withdraw alcohol from a bonded federal warehouse tax free. At the hearing before the commission two witnesses testified. The commission made findings of fact, however, which are not disputed by either party.

The order after formal matters about which there is no dispute was as follows:

"6. All employees of the railway company, and of the hospital association are compelled to become members of the hospital association, and are required to pay monthly dues computed on a bracket system, and based upon the employees' respective earnings.

"7. Since 1942, the railway company has made an annual contribution to the hospital association of seven percent of the amount of the employees' dues. The railway company also furnishes the hospital association transportation, auditing, accounting, and other services at no extra cost to the hospital association. The Treasurer and Auditor of the railway company serve in like capacities for the Association.

"8. The dues of the members and the annual contributions by the railway company are sufficient to maintain and operate the hospital.

"9. All income is used to operate the hospital and to provide new facilities.

"10. The hospital facilities are available to the paid membership of the Association only.

"11. The hospital is not open to the public, including the members' dependents, except in cases of extreme emergency. During the past two years, thirty-six nonmember patients were given hospitalization, and ten were given out-patient treatment.

"12. The length of time an employee may use the hospital facilities at any one time is determined by his length of service with railway company. Charges for overstaying the accrued hospitalization period legally can be made; however, in many cases, this rule is not enforced, and usually no attempt is made to collect from the employee.

"13. The benefits of the Association are available to those retired railway company employees who have paid their current hospital assessments. These retired employees pay assessments for hospitalization based upon the current minimum rate of $2.25 per month.

"14. Employees of the Association have, by popular vote elected to become subject to the provisions of the Railway Retirement Act.

"The Commission further finds that a hospital operated as a private institution in a manner equivalent to a compulsory group hospitalization plan, available only to members who are also employees of the railway company, and who are required to become dues-paying members in the Association, and which hospital is maintained solely for the benefit of the railway company, and its employees, is not a benevolent and charitable institution; that the property of such hospital is not exempt from taxation as property used exclusively for benevolent and charitable purposes; and that the application should, therefore, be denied."

Defendants argue first that the writ should be denied because the plaintiff has a plain and adequate remedy at law. It is true that G. S. 1949, 60-1702, provides that a writ of mandamus may not be issued where there is a plain and adequate remedy at law and G. S. 1949, 79-2005, provides in part:

". . . No action shall be brought or maintainable in any court for the

recovery of any taxes paid under protest unless the same is commenced within thirty days after the filing of such protest with the county treasuer, or, in case application shall have been filed with the commission as hereinbefore set out, unless the same is commenced within thirty days after the date the commission mailed its order on such protest to such taxpayer. . . ."

Also G. S. 1949, 60-1121, provides in part:

". . . An injunction may be granted to enjoin the illegal levy of any tax, charge, or assessment, or the collection of any illegal tax, charge or assessment, or any proceeding to enforce the same, . . ."

We have heretofore held that the remedy specified by G. S. 1949, 79-2005, was not an exclusive remedy. (See *Thompson v. Chautauqua County Comm'rs*, 147 Kan. 151, 75 P. 2d 839; also *Sherwood Const. Co. v. Board of County Comm'rs*, 167 Kan. 421, 207 P. 2d 409.) Probably the best statement of the rule is that in *Kittredge v. Boyd*, 136 Kan. 691, 18 P. 2d 563, where we said:

"1. It is first contended that mandamus is not the proper remedy—that plaintiff has a plain and adequate remedy at law. In this jurisdiction where the desideratum of the litigation is merely to obtain an authoritative determination of some purely legal question for the guidance of public officers mandamus has become the familiar vehicle to accomplish that objective. In *State, ex rel., v. State Highway Comm.*, 132 Kan. 327, 334, 295 Pac. 986, it was said:

" 'The use of mandamus to secure a speedy adjudication of questions of law for the guidance of state officers and official boards in the discharge of their duties is common in this state. (R. S. 60-1701, 60-1702.) Our conceptions of the proper use of mandamus to expedite the official business of the state have expanded far beyond the ancient limitations of matters justiciable in mandamus. (Citations.)' "

There is an important public question here and in accordance with the foregoing authorities we shall exercise our original jurisdiction in mandamus and settle it.

Defendants next argue that the motion to quash should be sustained because the writ and motion for a writ disclose that the alleged grievance was given full, complete, adequate and impartial consideration by them and the plaintiff has no clear, specific and defined right to the performance of the acts commanded by the writ. The authorities cited and relied on to sustain this point are those holding that where it is sought to establish that property is exempt from taxation on account of a constitutional or statutory ground, the one claiming the exemption must bring himself clearly within the statute or constitutional provision. No one can doubt the soundness of that rule. It does not have the weight claimed for it here. Plaintiff assumes that burden. The theory of plaintiff's case is that

since there is no dispute about the facts, the question is whether under these facts its property is being used exclusively for charitable or benevolent purposes.

The defendants' next two points are that their motion to quash the writ should be sustained because plaintiff's motion for a writ shows on its face that the order of defendants is based upon and consistent with and is substantiated by the evidence submitted, and the acts sought to be controlled are discretionary duties. What was said in dealing with the second argument of defendant disposes of these two points.

Defendants' fifth point upon which they argue the writ should be quashed is, the plaintiff has failed to establish that the property in question is used exclusively for a purpose which is exempt from taxation under either the constitution or the statutes. This argument brings up the merits of the action. The constitutional provision is article XI, section 1, which provides as follows:

"All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes . . . shall be exempted from taxation."

The statutory provision is G. S. 1949, 79-201, and provides:

"That the property described in this section, to the extent herein limited, shall be exempt from taxation: . . . All buildings and parts of buildings belonging to scientific, literary and benevolent associations, used exclusively for scientific, literary or benevolent purposes, . . ."

The defendants point out the definition of charity used by us in *Mason v. Zimmerman,* 81 Kan. 799, 106 Pac. 1005, where it is defined as "a gift to promote the welfare of others in need, and the term 'charitable' as used in such constitutional and statutory provisions, means intended for charity, and the word 'benevolent' as used therein, is entirely synonymous with 'charitable.'"

Defendants then make a statement as follows:

"Employment by the Santa Fe Railway Co. and currently paid up membership in good standing with the hospital association are the prime requisites for enjoyment of its privileges. It is an exclusive affair, with the public, including the immediate families of Santa Fe employees, and their dependents, barred from the use of hospital facilities. It is comparable to an exclusive club with the benefits accruing only to its closed membership."

Defendants thus succinctly state the theory upon which the state tax commission decided the matter and upon which they argue we should deny this writ.

Defendants concede the force of the rule announced in *Nuns of*

*St. Dominic v. Younkin,* 118 Kan. 554, 235 Pac. 869, where we held a hospital owned and managed by a corporation organized for benevolent purposes and which paid no dividends and which devoted all its income to the care of persons sick or injured and in improving and extending its facilities for so doing, and which received and cared for patients without discrimination as to their race, color or creed, was charity and its property used directly and solely for that purpose was used exclusively for charitable purposes. They point out, however, that in this case the hospital is available only to railroad employees who are in good standing and its facilities are not available to the general public. They argue this distinction takes the present case out from under the rule announced in *Nuns of St. Dominic v. Younkin,* supra.

This distinction is considered in 51 Am. Jur. Taxation, § 603. There it is said:

". . . Whether or not an organization is to be regarded as a charitable institution within the meaning of tax exemption statutes is often affected by the fact that its benefits are restricted to a particular class, and upon this question varying conclusions have been reached. This conflict, however, seems in most part, to be attributable to the divergent wording of various statutes. Generally, where the statute exempts institutions of purely public charity, an organization limiting its benefits to a restricted class is not exempt. A different rule ordinarily prevails, however, when the property, rather than its owners, is exempted from taxation if devoted to charitable purposes."

By the provisions of our constitution it is the particular property that is exempt and its exemption depends on its use. We dealt with the argument in *Masonic Home v. Sedgwick County,* 81 Kan. 859, 106 Pac. 1082. There the plaintiff was a corporation which owned a tract of land upon which it maintained a home for master masons, their wives, widows and children and children of members of the Eastern Star. We remarked the exemption depended solely upon the exclusive use of the property and not upon the ownership. We said:

"Those courts which hold that property used principally for the benefit only of persons in some way related to the members of a society (an artificial class, as it is called) is not exempt do so generally for the reason that the constitution or statute law governing the case provides that the charity shall be a purely public charity."

We said further:

"On the other hand, it is contended that the various charities which provide for any portion of the public, however arbitrary the rule of participation therein may be, relieve the public and all taxpayers of so much of the public burden,

and are thus a benefit to all; that the numerous so-called private charities in the aggregate provide for as great or a greater portion of the poor and dependent which the state is under obligation to support than do the so-called public charities."

We pointed out that in *Widows' and Orphans' Home of O. F. v. Commonwealth*, 126 Ky. 386, the following: as stated in the syllabus in 16 L. R. A., N. S. 829.

"That the benefits of a home for the support of widows and orphans are confined to those of members of a particular secret society does not deprive it of the character of a purely public charity within the meaning of a constitutional tax exemption."

We said:

"Considerable evidence was introduced in this case to show that the entire property of the home is used for the support, care and nursing of poor and dependent aged persons, and for maintaining, nurturing and educating young persons unable to care for themselves; that all this is done without any charge to the inmates, and without any profit or expectation of profit to the owner of the home, the plaintiff corporation. As before said, there is no conflict in the evidence. It shows that the home is supported as follows: The members of the subordinate Masonic lodges in the state pay certain prescribed dues to their respective lodges; from this fund so raised each subordinate lodge contributes one dollar for each of its members to the grand lodge of the state; of the fund thus created the grand lodge donates 50 per cent to the support of this home, and with this, with such private donations as are made to the home, constitutes its entire support."

In that case we clearly adopted the rule that the fact the facilities of a hospital or a home for the aged were available only to members of a particular class or group did not require a holding that the property was not being used exclusively for the charitable or benevolent purposes.

In City of *Palestine v. Missouri-Pacific Lines H. Ass'n*, 99 S. W. 2d 311, Court of Civil Appeals of Texas, 1936, the association operated a hospital much the same as this one. Some of the arguments were made that are made here. The court held:

"Charity such as will exempt institution from taxation need not be universal to be public . . . word 'purely' as used in statute exempting 'purely public charity' from taxation is intended to modify word 'charity' and not word 'public' and is used in sense of an equivalent to 'only,' 'wholly,' 'completely,' 'entirely.' . . ."

This case is easily distinguishable from *State, ex rel., v. Security Benefit Ass'n*, 149 Kan. 384, 87 P. 2d 560. There the question was whether property owned home and hospital association was exempt. We went to great lengths in the opinion to demonstrate that while

the Security Benefit Association and the Security Benefit Home and Hospital Association were separate legal entities, they were maintained and operated as an integral part of the same common plan and purpose, which was to provide life insurance, old age and disability benefits to and service homes for the aged and for orphans free or at low cost. We said:

"The fact that the two associations are separate legal entities does not obscure or alter the essential fact that they are operating together in furtherance of a common plan."

We in that opinion pointed out that neither in the *Nuns of St. Dominic v. Younkin,* supra, case nor the *Masonic Home v. Sedgwick County,* supra, case was the property being used in connection with the promotion of any other business. That is true as to the property in this case. The property of the Atchison, Topeka and Santa Fe Hospital Association is not being used or operated in connection with the promotion of any other business. We hold the property, both real and personal, of the Atchison, Topeka and Santa Fe Hospital Association is being used exclusively for charitable and benevolent purposes and hence is exempt from taxation pursuant to the provisions of article XI, section 1, of the constitution of Kansas.

As to the portion of the prayer where plaintiff asks for the refund of the taxes paid for 1950, this record does not disclose whether those taxes were paid under a legally sufficient protest. If they were not paid under protest, then plaintiff is not entitled to have them refunded. If they were so paid, then they should be refunded. The tax records will disclose this.

Since the action was brought to secure the determination of a legal point and since this opinion determines such point, no writ will issue.

Judgment for the plaintiff.