FRISCO EMPLOYES' HOSPITAL
ASSOCIATION, Appellant,

v.

STATE TAX COMMISSION OF MISSOURI
et al., Respondents.

No. 50509.

Supreme Court of Missouri,

Division No. 1.

July 13, 1964.

Motion for Rehearing or to Transfer
to Court En Banc Denied
Sept. 14, 1964.

George E. Bailey and George J. Pruneau, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Joseph Nessenfeld, Asst. Atty. Gen., Jefferson City, Thomas J. Neenan, City Counselor, Thomas F. McGuire, Associate City Counselor, Conway B. Briscoe, Jr., DeWitte T. Lawson, Jr., Assistant City Counselors, St. Louis, for respondents.

WALTER H. BOHLING, Special Commissioner.

The Frisco Employes' Hospital Association, plaintiff corporation (referred to as appellant or Association), owns and operates a 129-bed hospital in the City of St. Louis. The City Assessor placed this property on the assessment roll for ad valorem taxes as of January 1, 1963. This action was upheld upon successive reviews by the Board of Equalization of said City, the State Tax Commission, and the Circuit Court of the City of St. Louis, resulting in an assessment at $137,840.00. The Association has appealed. The City of St. Louis was permitted to intervene in the Circuit Court. The issue for determination is whether the Association's hospital is "ac-

tually and regularly used exclusively * * * for purposes purely charitable" within Section 137.100(5)[1] and Art. X, § 6, Mo.Const. V.A.M.S. (set forth more fully hereinafter), and consequently exempt from taxation. This case was submitted to the State Tax Commission upon an agreed statement of facts. We state the relevant facts.

The Association was organized in 1898 as a nonprofit corporation. See now Chapter 352. It purchased the site and erected the hospital. Its present name was adopted in 1911.

The management and control of the Association is vested in a Board of Trustees. At first the St. Louis & San Francisco Railroad Company, predecessor to the present St. Louis-San Francisco Railway Company (sometimes herein referred to as the Railroad), appointed the majority of the Board of Trustees. Ever since an amendment of the bylaws in 1940 the employe representatives have constituted a majority of the Board.

The Association provides medical and surgical services on an inpatient and outpatient basis to its members in the nine-state area in which the Railroad and its subsidiaries operate. This hospital is the only hospital owned by the Association. It is a duly licensed and accredited hospital.

A chief surgeon has the immediate supervision of the hospital. As permitted by the bylaws, he is also chief surgeon for the Railroad and receives one half of his salary from it. The hospital is well staffed.

In general, the facilities of the hospital are available only to members of the Association, which is limited to employes and retired employes of the Railroad, employes of the Association, and officers and employes of labor organizations representing the Railroad employes. Families of the Association's members are not members of the Association; but the wives and dependent children of a member and persons other than members injured on the line of the Railroad may, if facilities are available, receive treatment as pay patients. No pay patients have been admitted for many years on account of a shortage of facilities.

The Association's funds are derived mainly from monthly dues paid by the membership. The current monthly dues of regular members are $9.00 and for "pensioners" $8.00. ("Pensioner," as here used, does not mean an indigent person but refers to one who has had ten-years' membership in the Association, who has retired from the Railroad's active service, and who is also known as a "limited member.") A breakdown of the membership into categories shows the following monthly payments: Operating crafts, 2,574 members, paid by employe through payroll deduction; nonoperating crafts, officers and specialists, 5,922 members, $7.58 paid by employer— $1.42 paid by employe through payroll deduction; hospital employes, 208 members, $6.80 paid by Association—$2.20 paid by employe through payroll deduction; furloughed employes, 50 members, and labor representatives, 17 members, $9.00 paid directly by member; pensioners, 1,834 members, $8.00 paid directly by pensioner. Under collective bargaining agreements, the Railroad pays the above $7.58. It has accorded 937 officers and specialists, not members of a union, the same benefit. It pays an additional 32¢ a month for nonoperating craft employes for extended hospitalization in the event of a furlough and, under an agreement with the Association, $5,500 a month for treatment of employes injured while on duty. The Association agreed to pay the above $6.80 for certain of its employes under a bargaining agreement and now pays the $6.80 for all of its employes whether or not covered by a labor contract.

We understand that during 1962 970 limited members (pensioners) received 14,981 patient-days' service at the hospital; that the costs allocated to this service was $337,-

1. Statutory references are to RSMo 1959 and V.A.M.S.

072.50; and that the Association's income from the limited members was $165,140.70. Expressed otherwise, the limited members received 40.28% of the patient-days' service while contributing 13.68% to the Association's gross income for 1962.

Article II of the Articles of Association, so far as material, states: "The purposes for which this Association is formed are the support of a benevolent and charitable undertaking in this: To provide medical and surgical treatment and care for the employes of the St. Louis and San Francisco Railroad Company, and of its associated Companies, who may be injured or disabled by accident or sickness while in such employ, and in the line of duty to such extent only and under such rules and regulations as may be prescribed from time to time by the Trustees hereinafter provided for; and to furnish such employes with additional privileges and benefits, not inconsistent or interfering with the main object of the Association, * * *."

Article II of the Association's bylaws is to like effect, but much briefer in wording.

Under Article I of the Association's Rules and Regulations employes of the Railroad and its affiliated companies here involved "shall from the date of their employment be considered members of the Association * * *."

Article IV of the Articles of Association provides that " * * * the funds necessary for carrying out its purpose shall be raised in such manner as may be provided by the By-Laws."

The Rules and Regulations provide for the assessment of specified monthly dues against the membership.

The constitutional and statutory provisions material here read: " * * * all property, real and personal, not held for private or corporate profit and used exclusively * * * for purposes purely charitable * * * may be exempted from taxation by general law. All laws exempting from taxation property other than the property enumerated in this article, shall be void." Mo.Const.1945, Art. X, § 6.

And, our General Assembly has provided: "The following subjects are exempt from taxation for state, county or local purposes: * * * (5) All property, real and personal *actually and regularly used exclusively* * * * *for purposes purely charitable* and not held for private or corporate profit * * *." § 137.100(5).

■ The case is presented on the theory appellant is a nonprofit corporation under Chapter 352. Appellant contends its hospital, not exempted by name, is exempt under our italicized words supra. A charitable use tax exemption depends upon the purposes of the organization and the use made of the property involved. Each claim rests upon the particular facts of that case. St. Louis Gospel Center v. Prose, Mo., 280 S.W.2d 827, 831 [4]; St. Louis Council, Boy Scouts v. Burgess, 362 Mo. 146, 240 S.W.2d 684, 687; Taxation, 51 Am.Jur. §§ 634, 635; 84 C.J.S. Taxation § 297, d; Annotations, 22 A.L.R. 907; 108 A.L.R. 284, as to hospitals, 287, 289, 298, 303; 144 A.L.R. 1483.

The following has been considered a comprehensive and carefully drawn definition of a legal charity: " 'A gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.' " (From Mr. Justice Gray in Jackson v. Phillips, 1867, 14 Allen (96 Mass.) 539, 556; 14 C.J.S. Charities § 1, n. 3.) Salvation Army v. Hoehn, 354 Mo. 107, 188 S.W.2d 826, 830; Northeast Osteopathic Hospital v. Keitel, 355 Mo. 740, 197 S.W.2d 970, 975 [7].

■ The last sentence of § 6, Art. X, Mo.Const., admonishes our General Assem-

blies and courts not to extend exemptions from taxation beyond the authorization found in said Article X. Provisions exempting property from taxation should be strictly, yet reasonably, construed. Midwest Bible & Missionary Inst. v. Sestric, 364 Mo. 167, 260 S.W.2d 25, 29 [2]; St. Louis Gospel Center v. Prose, supra, 280 S.W.2d 1. c. 830.

Appellant, in its brief, makes several points which respondents do not question and do not brief. We mention that some of the issues thus raised are subject to limitations not stated in appellant's brief. We do not, however, extend this opinion to discuss these matters as we consider them not determinative of this appeal.

■ Appellant says the fact that 40% of the hospital days of 1962 were used by limited members (pensioners) representing approximately 17% of the total Association membership, that said members pay $12.00 a year less than other members of the Association, and that this service costs $170,000 more than was received from limited members, shows the Association is relieving society of the problem of "medical care of the aged." The term "limited member" indicates they are not entitled to the full benefits of a regular membership. The limited memberships are open to retired employes who have had not less than ten years of regular membership in the Association. Appellant overlooks that while a limited member was a regular member situations like that experienced in 1962 may have occurred. But, assuming appellant's argument has some merit, the presentation fails to establish that appellant's hospital is "used *exclusively* * * * for purposes purely charitable."

A relief department organized by a railroad to provide sick and accident benefits for employes voluntarily becoming members upon agreeing to release the railroad of claims for damages, and being maintained by sums, based upon earnings, deducted from a member's wages, with the railroad contributing in the event of a deficit, and being controlled by the railroad, was held not a charitable institution in a tort action, the court stating: "In our judgment the relief department organized by the defendant company, in view of the regulations provided for its government, cannot be classed as a charity without doing violence to every significance that word bears, either in popular or legal usage. It is not a charity within the definition of Justice Gray, above quoted, because the fund administered is not a gift by the employees, who make contributions; much less by the railroad company, which does not make any unless a deficit occurs. * * * This strikes us as a purely business arrangement on the part of the employees of the railroad company." Haggerty v. St. Louis, K. & N. W. R. Co., 1903, 100 Mo.App. 424, 446, 74 S.W. 456, 462.

Appellant, under factual situations similar to those in the Haggerty case, was considered the alter ego of the railroad and the railroad not exempt from tort liability in connection with the treatment of patients in Phillips v. St. Louis & S. F. R. Co., 1908, 211 Mo. 419, 435, 111 S.W. 109, 112, 113, 74 L.R.A.,N.S., 1167. The court said: "To our mind it [the relationship between the two corporate entities] is immaterial as to the true character of the hospital association as indicated by its charter provisions. It has, however, but few, if any, of the earmarks of a voluntary benevolent· association. Nor are there any earmarks of a public charity. What is received is paid for by the recipients. Under the weight of authority it cannot be held to be a charitable institution."

The Haggerty and Phillips cases met approval and were followed in Chaffee County v. Denver & R. G. R. Co. E. R. Asso., 70 Colo. 592, 203 P. 850, 22 A.L.R. 902, 905, a case holding a hospital created and maintained by the employes of a railroad, whose membership therein was involuntary, for their benefit was not used solely and exclusively for strictly charitable purposes within the meaning of a constitutional tax exemption.

Appellant distinguishes the Haggerty and Phillips cases on the ground it, ever since 1940, has been under the control of the Railroad's labor organizations and is not the alter ego or agent of the Railroad. The facts in the cases mentioned differ from the facts of this record, but the discussions in said cases on the issue whether the relief associations were charitable institutions, distinguished from the issue of tort liability, are of some pertinence here.

We have hereinbefore stated the facts of this record. They are quite similar to the facts in Trustees of Local 88, Meat and Related Industries, Health and Welfare Fund Trust v. State Tax Comm., 1963, Mo., 367 S.W.2d 549. The following are among the similarities common to both cases: The Medical Institute of the Trustees case was also organized under Chapter 352 (1. c. 551). Its purposes were to provide medical, surgical, hospital and dental attention for members of Local No. 88, their wives and dependents (1. c. 550, 551, 553 [1]). Said Medical Institute owned land and a building thereon, termed "hospital" in its stated purposes, to furnish such services, and was furnishing service on an out-patient basis (1. c. 551). Its property was not used for any other than the stated purposes (id.). Doctors, other personnel, supplies and facilities were furnished by the Medical Institute to accomplish said purposes (id.). The project was financed by funds contributed by the employers of members of Local 88 under contracts governing the employes' wages, working conditions, and "fringe" benefits, the employer paying $29.70 per employe per month, which was used to construct the building and facilities and to furnish the doctors, nurses, other personnel, et cetera (551, 552). This payment by the employer was a part of the "cost-of-doing-business," part of the employer's labor costs, ultimately to be met from purchases by the employer's customers (552). Briefly stated, only members of the Medical Institute were entitled to receive the benefits (550).

Answering appellants' insistence in said Trustees case that their property was " 'clearly used for purposes purely charitable,' " the court pointed out that the $29.70 monthly payments by the employers were not free donations to the Medical Institute, but were payments "made under written contracts negotiated with employers who provide the funds for the so-called 'free medical, dental and surgical care.' We find no charity about it." (1. c. 554.)

The court held appellants' statement that relief from suffering and disease was one of the most prominent forms of charity overlooked "that the rule does not necessarily apply where the relief from suffering and disease is provided for by contract with the employer of the one receiving the relief so that the one receiving the relief is not obtaining a gift or charity, but is only obtaining what he has contracted to receive, as a part of the payment for his own labors under the term 'fringe benefits.' " (554, 555.)

In the Trustees case (1. c. 556), the court discussed, among others, the cases of A. T. & S. F. Hospital Ass'n v. State Comm. of R. & T., 173 Kan. 312, 246 P.2d 299, and City of Palestine v. Missouri-Pac. Lines Hospital Ass'n, Tex.Civ.App., 99 S.W.2d 311, 314, cases holding associations operating with purposes and under facts similar to appellant's to be charitable institutions and exempt from taxation. We declined to follow said cases, disagreeing with their reasoning. Appellant has advanced no sound ground for our charting a different course under this record. We remain in accord with the statements in the Trustees case, supra.

The City of Palestine case, supra, 1. c. 315 [5], discloses that Texas courts construe "purely" in their constitutional phrase "purely public charity" as modifying charity. This construction is out of harmony with what is said in Fitterer v. Crawford, 157 Mo. 51, 59, 57 S.W. 532, 534, 50 L.R.A. 191, in discussing the phrases "purely public charity" and "used for purposes purely

charitable." See also what is said about the Fitterer case in the Trustees case (367 S.W. 2d 1. c. 555, 556). It may be well to note that In re Burroughs' Estate, 357 Mo. 10, 206 S.W.2d 340, 344, mentioned in said Trustees case, stated in closing: "In the case before us there is nothing in the agreed statement of facts to show that the Masonic Orders of Mexico are engaged in any activities, social or otherwise, except those of the Masonic Order." See St. Louis Lodge, No. 9, B. P. O. E. v. Koeln, 262 Mo. 444, 171 S.W. 329, L.R.A.1915C 694, Ann.Cas.1916E 984.

Appellant takes the view: "A not-for-profit hospital is a charity." Appellant says: Appellant's hospital, "'absent special circumstances, is a charity if not held for private or corporate profit'"; and that appellant's hospital "'is not held for private or corporate profit.'"

Under the constitutional provision voiding exemptions not within Art. X, § 6, exemption provisions certainly should not be "enlarged beyond reasonable implications." St. Louis Gospel Center v. Prose, Mo., 280 S.W.2d 827, 830. That a hospital exists as a nonprofit association and has no capital stock is not sufficient for exempting its property from taxation. Trustees case, supra, 367 S.W.2d 553, 554 [2]. Appellant ignores, for instance, the requirement that the property must be "used exclusively * * * for purposes purely charitable." § 137.100.

We, as in the Trustees case (1. c. 556), are unable to follow the thought in the City of Palestine case to the effect that appellant's services are furnished "through absolute gratuity." Appellant directs attention to and purports to quote 14 C.J.S. Charities, § 2, p. 422: "Briefly, the test which determines whether a hospital is charitable or otherwise * * * is whether or not it is, maintained *for gain or profit.*" The phrase we have italicized reads in C.J.S., "for gain, profit, or advantage." See Northeast Osteopathic Hospital v. Keitel, supra, 197 S.W.2d 970, 975 [8]. Again, our law requires that the property be "used ex-

clusively * * * for purposes purely charitable." Securing the funds for the operation of appellant's hospital through assessments against its members and requiring their employers under labor contracts to pay portions of such assessments is not an operation of the hospital through charitable gifts, donations or gratuities. Trustees case, supra, 367 S.W.2d 1. c. 554. The payment of the assessments is a part of the cost of doing business by the employer and such payments with the additional payments by the members are the consideration for the Association furnishing the services to the employes who are the Association members. Throughout, there is a quid pro quo—a quid pro quo for the employer and for the employe in the assessments, being pay for work performed; and a quid pro quo for the treatment furnished by the hospital and received by the member of the Association. It has been said: "Charity seeketh not her own." (1 Cor. 13, 5, King James' Version.)

Appellant's beneficence is limited to its members. The wife and dependent children of a member and those injured on the Railroad may receive treatment as pay patients; but no pay patients have been treated for many years. Our statement of facts discloses how the Association secures its funds. Those who or for whom the Railroad and the Association help pay the assessments are the ones entitled to appellant's services. This has the earmarks of a beneficial society or association, also referred to as a benevolent society or association. The terms "beneficial" and "benevolent" are frequently used interchangeably, but there is a distinction in that a benevolent association confers benefits without requiring an equivalent from the one benefited. 10 C.J.S. Beneficial Associations § 1. The terms "benevolent" and "charitable" are also used interchangeably, but "benevolent" is the broader term. See, for instance, Annotation, 144 A.L.R. 1485; 14 C.J.S. Charities § 12, p. 441; 10 Am.Jur. § 7; 84 C.J.S. Taxation § 282, p. 542; 51 Am.Jur. §§ 601, 626. Reasonably strict construction should take cognizance of the difference in

the meaning of terms, particularly under the limitation found in our constitution, Art. X, § 6. It has been said that "dominant use" should not be substituted for "used exclusively." Young W. C. A. v. Baumann, 344 Mo. 898, 130 S.W.2d 499, 502; Evangelical Lutheran Synod of Mo., Ohio and Other States v. Hoehn, 355 Mo. 257, 196 S.W.2d 134, 141, et seq., particularly [15].

Taxation is the rule. Exemption from taxation is the exception, the grant of a special privilege, a trend toward an abandonment of sovereignty and a departure from the philosophy requiring a fair distribution of the tax burden. It is stated in 84 C.J.S. Taxation § 297, p. 615: *"Theory underlying exemption of hospitals* is that they relieve the state of a burden which would otherwise rest upon it." 51 Am.Jur. § 635, p. 607; Annotation, 34 A.L.R. 650. An exemption to a hospital, absent this essential prerequisite, is the equivalent of a gift of public funds at the expense of the taxpayers. We know of no duty on the state to provide general hospital services for those capable of providing it for themselves. There is no indication of record for a finding that the officers or employes of the Railroad or any of them are or might become public charges. Many of the Association members might resent an imputation that he is an object of charity. The Association functions in aiding members to guard against unexpected and heavy hospital expenses, charging and receiving a consideration therefor. Persons join the Association for the gain and advantage they anticipate receiving under group bargaining for hospital services, and not for dispensing charity to others. The fact that trustees represent the members of the Association demonstrates the ability of the members to provide the needed services for themselves. Appellant competes with taxpaying hospitals for patients able to meet their hospital expenses. See Fitterer v. Crawford, supra, 157 Mo. l. c. 64, 57 S.W. l. c. 535; Evangelical Lutheran Synod, etc. case, supra, 196 S.W.2d l. c. 147.

We are not unmindful that different results have been reached under similar facts in different jurisdictions. And, we are mindful of actions on behalf of the Blue Cross, Blue Shield, and other like institutions involving the issue of their property being tax exempt. See among others, Associated Hospital Service, Inc. v. City of Milwaukee, 1961, 13 Wis.2d 447, 109 N.W. 2d 271, 88 A.L.R.2d 1395; Annotation, l. c. 1414; Cleveland Hospital Serv. Asso. v. Ebright, 1943, 142 Ohio St. 51, 49 N.E.2d 929; Hospital Serv. Asso. of Toledo v. Evatt, 1944, 144 Ohio St. 179, 57 N.E.2d 928; United Hospitals Serv. Asso. v. Fulton County, 1960, 216 Ga. 30, 114 S.E.2d 524. Some of the cases involved statutes exempting the institution from taxation. It is not necessary to develop these cases under the issues presented here.

Appellant's hospital is not "actually and regularly used exclusively * * * for purposes purely charitable," and is subject to assessment for ad valorem taxes.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by BOHLING, Special Commissioner, is adopted as the opinion of the court.

All concur.

## ON MOTION FOR REHEARING OR IN THE ALTERNATIVE TO TRANSFER TO BANC

PER CURIAM.

Appellant's "Motion for Rehearing or in the Alternative to Transfer to Banc" is to the effect that our opinion "adopts the former strict construction" of Art. X, § 6, Mo. Const., and § 137.100(5), quoted therein, and overlooks that said former construction was later held so strict as to be unreasonable. Salvation Army v. Hoehn, 354 Mo. 107, 188 S.W.2d 826, 829 [4–7], overruling, in so far as conflicting, State ex rel. St.

Louis Y.M.C.A. v. Gehner, 320 Mo. 1172, 11 S.W.2d 30, and St. Louis Y.M.C.A. v. Gehner, 329 Mo. 1007, 47 S.W.2d 776, 81 A.L.R. 1449. See also Bader Realty & Inv. Co. v. St. Louis Housing Authority, 358 Mo. 747, 217 S.W.2d 489, 492; Y.M.C.A. v. Sestric, 362 Mo. 551, 242 S.W.2d 497, 503.

Appellant, in its original brief and in this motion, quotes the following from Baptist Hospital v. City of Nashville, 156 Tenn. 589, 3 S.W.2d 1059, 1060 [1]: "The courts are practically unanimous in holding that a charitable institution does not lose its charitable character, and its consequent exemption from taxation, merely because recipients of its benefits, who are able to pay, are required to do so, where funds derived in this manner are devoted to the charitable purposes of the institution." See also State ex rel. Alexian Brothers' Hospital v. Powers, 10 Mo.App. 263, affirmed by a divided court in 74 Mo. 476 and 62 A.L.R. 330.

■ Our holdings are that charitable use exemptions depend upon the actual use made of the property and the stated objectives of the corporate organization are not controlling. St. Louis Gospel Center v. Prose, Mo., 280 S.W.2d 827, 830 [4] and cases cited; Evangelical Lutheran Synod v. Hoehn, 355 Mo. 257, 196 S.W.2d 134, 143.

Salvation Army v. Hoehn, supra, 188 S. W.2d 826, 830, quotes State ex rel. Spillers v. Johnston, 214 Mo. 656, 113 S.W. 1083, 1085(b), 21 L.R.A.,N.S., 171, on the meaning of "used exclusively": " 'The phrase "exclusively used" has reference to the primary and inherent use as over against a mere secondary and incidental use. People ex rel. v. Lawlor, 74 App.Div. 553, 77 N.Y.S. [840], loc. cit. 842 et seq. If the incidental use (in this instance [the proprietor and family] residing in the building) does not interrupt the exclusive occupation of the building for school pur-

poses, but dovetails into or rounds out those purposes, then there could fairly be said to be left an exclusive use in the school on which the law lays hold.' " See Evangelical Lutheran Synod case, supra, 196 S.W.2d l. c. 143 [15].

St. Louis Council, Boy Scouts of America v. Burgess, 362 Mo. 146, 240 S.W.2d 684, 686 [1, 2], citing authority, states: "Actual and regular user for such purposes [authorized exemption objectives] must be proved. Mere prospective user is not sufficient." Property used for hospital purposes is not specifically named as exempt from taxation in Art. X, § 6, Mo.Const. or in § 137.100(5). Hospitals must come within the phrase "for purposes purely charitable" to qualify for tax exemption under said provisions.

Appellant would distinguish this case from Trustees of Local 88, etc. v. State Tax Commission, Mo., 367 S.W.2d 549, on the ground that case involved "a dispensary—a building in which doctors maintained offices" ; contending "that the property of a nonprofit hospital devoted to alleviating the suffering of mankind is, by nature of its use, 'used exclusively for purposes purely charitable,' even though the hospital is available only to members of a non-profit association." We do not agree that the property of every hospital, organized under the benevolent or nonprofit association's law is necessarily, actually and regularly used exclusively for purposes purely charitable. As brought out in our statement of the facts, the facilities of appellant's hospital are available only to members of appellant association. Many years have passed since there were any pay patients. The primary and apparently the sole use of the hospital is for the advantage of the members of plaintiff association. The reasoning underlying the result reached in the Trustees of Local 88 case is applicable to the stipulated material facts of this record.

Appellant's motion is overruled.